[No. 13023.   Department Two.   August 14, 1916.]

R. P. WOODWORTH, *Appellant*, v. SCHOOL DISTRICT No. 2, STEVENS COUNTY, *et al., Respondents.*[1]

PRINCIPAL AND AGENT — POWERS OF AGENT — SALES—COLLECTION—APPARENT AUTHORITY—EVIDENCE—SUFFICIENCY.   The jury is warranted in finding that the agent of a manufacturer of school clocks had apparent authority to receive school warrants in pay for clocks sold and installed by him, where it appears that he was authorized to use letter heads describing himself as "Pacific Coast Representative," it was his duty to make sales and installations, to pay for material and labor, and charge the same in his expense account, which he did without any communication from the company except acknowledgment of the order, especially where the company acknowledged the agent's authority to negotiate terms of settlement.

SAME—PROOF OF AGENCY—DECLARATIONS OF AGENT—ADMISSIBILITY. The authority of a selling agent to collect for clocks sold to a school district may not be shown by declarations of the agent not known to or acquiesced in by the principal, even though an agency for one purpose is admitted.

SAME—PROOF OF AGENCY—DECLARATION OF THIRD PERSON.   Neither can such authority be shown on the declarations of a third person temporarily placed in charge of the office and authorized to make the collection, in the absence of proof of his authority to bind the company by his declarations.

SAME—AUTHORITY OF AGENT — POWER TO COLLECT — ACTIONS — INSTRUCTIONS.   In an action for the price of school clocks sold and installed by an agent, but shipped direct to the purchaser by the company, it is reversible error to instruct the jury that an agent in exclusive possession for the purpose of selling has apparent authority to receive payment; since the agent did not have possession at the time of the sale.

SAME—AUTHORITY OF AGENT — RATIFICATION—"ESTOPPEL"—DELAY. Delay in bringing action, after an agent's embezzlement of school warrants given in payment for clocks sold, does not estop the company from denying the agent's authority to receive the warrants, where the action was commenced two months before the warrants were paid and the school district was in the same position as if it had been immediately commenced, and there being no act of ratification; as there is a distinction between ratification and estoppel.

[1] Reported in 159 Pac. 757.

SAME—SCOPE OF AUTHORITY—INSTRUCTIONS — BURDEN OF PROOF. In an action for the price of clocks sold to a school district by an agent, for which school warrants were given in payment to the agent, the burden is upon the defendant to prove the agent's authority to collect, and the jury should be instructed that defendant could not assume the authority or rely on the agent's representations and must use diligence to ascertain his authority and dealt with him at their peril.

SAME. In such action, the jury should be instructed that an agent employed to make sales on credit is not authorized to collect, and payment to him will not discharge the principal unless some further authority is shown; also, that possession of the bill or account does not authorize the purchaser to make payment to him.

HOLCOMB and CHADWICK, JJ., dissent.

Appeal from a judgment of the superior court for Stevens county, Jackson, J., entered June 26, 1915, upon the verdict of a jury rendered in favor of the defendants, in consolidated actions on contract. Reversed.

*O. C. Moore,* for appellant.

*Howard W. Stull, John B. Slater, J. A. Rochford,* and *F. Leo Grinstead,* for respondents.

MAIN, J.—The plaintiff, as assignee for collection of the Self Winding Clock Company, brought two actions in the superior court for Stevens county, one against School District No. 2, and the other against Union High School District No. 3. The purpose of these actions was to recover the purchase price of certain clocks, and 'the necessary equipment, which had been furnished to the districts by the Self Winding Clock Company. After the issues were framed, the two actions were consolidated and tried in the superior court as one action. The jury's verdict was in favor of the school districts. From the judgment entered upon this verdict, the appeal is prosecuted.

The facts, so far as necessary to an understanding of the questions here presented, may be summarized as follows: The Self Winding Clock Company was engaged in the manufacture of clocks intended for use in school buildings, and for

other similar purposes. The factory and head office of this company was located in Brooklyn, New York. On or about April 5, 1910, one J. A. Jansson opened an office in San Francisco, California, as the Pacific Coast representative of the clock company. The scope of the power and authority to be exercised by Jansson as such representative was set forth in a typewritten memorandum delivered to him by the company. In this memorandum he was authorized to have suitable letter-head stationery prepared, with his name in the margin as "Sales representative of this company." It was expressly provided in the memorandum that Jansson should not make any collection of past due accounts, except upon special written or telegraphic request of the clock company. In pursuance of the authority given him by this memorandum, Jansson caused letter-head stationery to be printed, upon which his name appeared as "Pacific Coast Representative."

On March 27, 1911, Jansson sold to the school districts above mentioned the clocks and equipment for the purchase price of which this action was brought. The sales were reported to the home office in Brooklyn, New York. An acknowledgment from that office was sent direct to the school districts. Some time during the summer of the year 1911, Jansson installed the clocks in the buildings for which they had been purchased. In making the installation, he was authorized to employ labor and make such local purchases of material as was necessary, and pay for the same. The money thus disbursed was to be reported by Jansson in his semi-monthly expense account to the company, and thereupon he would be repaid the money so expended.

On December 9, 1911, school district warrants were issued, payable to Jansson for the cost of the clocks and the installation. On December 11, 1911, these warrants were presented to the county treasurer, and payment was refused for want of funds. Thereafter, the exact date of which does not appear, Jansson sold the warrants to the bank of Colville. The

money received upon the warrants was not remitted to the clock company, but was wrongfully converted by Jansson to his own use.

On May 27, 1912, the clock company wrote a letter, addressed to the clerk of one of the school boards, inquiring why the material and labor furnished in connection with the clocks and program system had not been paid for. This was the first communication from the home office to the district, other than the acknowledgment of the receipt of the orders shortly after the contract was made. No answer being received to this letter, on August 28, 1912, another letter was addressed to the district. After this letter had been received, the clock company was informed that the warrants had been issued and delivered to Jansson. The warrants were paid on April 25, 1914. Two months or more prior to this date, the actions against the school district had been instituted. Some further mention of the facts will be made in connection with the consideration of the particular points to which they may be pertinent.

There are three general questions for determination: First, Did Jansson have apparent authority, as agent of the clock company, to receive the warrants? Second, Was there error in the admission of testimony during the trial? And Third, Did the trial court err in the instructions given or the requests refused?

I.   So far as the school districts were concerned, they were justified in dealing with Jansson within what was the scope of his apparent authority. They had no knowledge of the limitation placed upon his authority by the clock company when he became its Pacific Coast representative. The letter-head stationery which Jansson used in corresponding with the districts had his name printed thereon as Pacific Coast representative. Jansson not only had the power to sell clocks and equipment, but the installation was under his direction and supervision. In installing the clocks, he was authorized to purchase material and employ labor, and pay for the same,

which in turn was to be charged to the clock company in his expense account. In the letter written by the clock company on August 28, 1912, fault was found with the district because it had not answered the previous letter, and in this connection it was said:

"Even though you have been in communication with our Mr. Jansson at San Francisco in regard to terms of settlement we think you should, in fairness to us, make response direct to this office advising us of your reasons for your long delay in making settlements."

This letter, even though written after the sales, recognizes the right of the districts to negotiate terms of settlement with Jansson. We think it cannot be held, as a matter of law, that the school districts were going beyond the scope of Jansson's apparent authority when the warrants were issued and delivered to him. Under the facts stated, the jury had a right to find that Jansson had apparent authority to receive the warrants.

Our attention has been called to the general rule that the collecting power of an agent is limited to his receiving for the debt of his principal that which the law declares to be a legal tender, or which by common consent is considered and treated as money. But in this case the company is in no sense harmed by reason of the fact that the warrants were issued to Jansson and by him subsequently cashed at the bank. Had he been paid cash instead of being given warrants, he would have had an equal opportunity to embezzle the funds. In addition to this, the legal and recognized way of school districts in making payments is by the issuing of warrants. The clock company, in its letter under date of February 5, 1913, which authorized one Mitchell to make collection of the account, requested the district to arrange "to give Mr. Mitchell a warrant in settlement of this account."

II. During the trial, one member of the school board, while testifying in behalf of the districts, was permitted,

over objection, to testify to certain declarations of Jansson to the effect that he was authorized to receive and receipt for moneys on behalf of his principal, the clock company. In other words, the declarations of Jansson as to the scope of his power and authority were received. This was error. Neither the fact of agency, nor the scope of the agent's authority, can be established by declarations of the alleged agent in the absence of the principal. The fact that the agency may be admitted for one purpose does not make the admissions and declarations of the agent which are not known to or acquiesced in by the principal admissible for the purpose of establishing the scope or extent of his authority. *Western Security Co. v. Douglass,* 14 Wash. 215, 44 Pac. 257; *Gregory v. Loose,* 19 Wash. 599, 54 Pac. 33; *Allen v. Farmers & Merchants Bank,* 76 Wash. 51, 135 Pac. 621; *Bacon v. Johnson,* 56 Mich. 182, 22 N. W. 276; *Chicago, R. I. & P. R. Co. v. Chickasha Nat. Bank,* 174 Fed. 923; 1 Clark & Skyles, Agency, § 465.

In the authority last cited, the rule is stated thus:

"Nothing is better settled than the rule that the admissions and declarations of an alleged agent or of an agent, not known to and acquiesced in by the principal or alleged principal, are not admissible for the purpose, either of proving the fact of agency, or of establishing the nature or extent of his authority. To hold otherwise would be to allow a person to establish an agency for another, merely by holding himself out as agent, or to allow one who is the agent of another for a certain purpose to extend his authority by his own declarations or acts, irrespective of the acts of the principal."

In the case of *Lemcke v. Funk & Co.,* 78 Wash. 460, 139 Pac. 234, Ann. Cas. 1915 D. 23, the general rule is recognized. It was there held, however, that the fact of agency having been established, the acts and declarations of the agent were admissible on the issue as to whether in fact he so held himself out and did make the contract there in controversy as the contract of his principal. The holding of

the court upon the question presented in that case does not authorize the admission in evidence of the declarations of Jansson for the purpose of establishing the scope and extent of his authority.

It is also claimed that another witness was permitted to testify, over objection, that Mitchell, who came to Colville in September, 1913, for the purpose of collecting from the school districts on behalf of the clock company, made statements relative to the authority of Jansson, and his embezzlement of the money belonging to the clock company. Mitchell, after Jansson had absconded, had been placed temporarily in charge of the San Francisco office. From the record in this case, it does not appear that Mitchell had any authority to bind the home office by statements relative to the authority or conduct of Jansson, and, consequently, such declarations were not properly admissible.

III. The trial court instructed the jury that, where an agent has exclusive possession of property of his principal, with authority and for the express purpose of selling it, a purchaser from such agent would have a right to rely upon the agent having authority to receive payment therefor. This instruction should not have been given. Jansson did not have possession of the property at the time the sale was made; and when it was shipped from the factory it was billed, not to him, but direct to the school district. The instruction is not applicable to the facts in this case.

The court also instructed the jury that if they should find from the evidence that Jansson had no authority to receive payment at the time payment was made, yet if they found that, subsequent to such payment to Jansson, the Self Winding Clock Company acquiesced in or ratified or did not repudiate such payment after having knowledge thereof, then the clock company was estopped to deny the authority of Jansson to receive such payment. There is no evidence in the case upon which an estoppel can be predicated. While

the clock company did not immediately bring actions after learning that the warrants had been delivered to Jansson, and by him cashed and the money embezzled, the school districts were put in no different position than they would have been had the actions been immediately begun. The actions were begun some two months prior to the time when the warrants were actually paid by the districts. The clock company did not, either by affirmative or negative action, induce the district to act or refrain from acting in the matter, and therefore there could be no estoppel. *Daniel v. Gold Hill Mining Co.*, 28 Wash. 411, 68 Pac. 884; *Hughes v. New York Life Ins. Co.*, 32 Wash. 1, 72 Pac. 452; *Murray v. Briggs*, 29 Wash. 245, 259, 69 Pac. 765. The instruction as given fails to recognize the distinction between ratification and estoppel. While both may be present in a given case, and there may be cases in which one will be estopped to deny that he has ratified, yet they are not the same. In 1 Mechem, Agency (2d ed.), § 349, the distinction is clearly pointed out as follows:

"Ratification, moreover, differs from estoppel, though they are often very closely associated. Estoppel requires that the party alleging it shall have done something or omitted to do something, in reliance upon the other party's conduct, by which he will now be prejudiced if the facts are shown to be different from those upon which he relied. Ratification requires no such change of condition or prejudice: if the principal ratifies, the other party may simply avail himself of it. As soon as ratification takes place, the act stands as an authorized one, and not merely as one whose effect the principal may be estopped to deny. If there be ratification, there is no occasion to resort to estoppel. There may, however, be cases in which one may be estopped to deny that he has ratified.

"The difference in effect may be striking: ratification is retroactive, estoppel operates upon that done after the act and in reliance upon it; ratification makes the whole act good from the beginning, while estoppel may only extend to so much as can be shown to be affected by the estopping conduct."

The trial court was requested to instruct the jury that persons who deal with an agent cannot rely upon the agent's representations as to what the authority is, nor can they assume that such authority exists, but it is their duty, whether the agency be general or special, to make inquiry, and use all proper diligence to ascertain the nature and extent of such authority; and if they do not do so, they deal with the agent at their peril; and if the authority of the agent is disputed, the burden of proof is upon them to prove it. This instruction should have been given. Under the authorities above cited, the declarations of the agent as to the scope of the authority were inadmissible, and the jury, when request was made, should have been told that it was the duty of those who dealt with the agent to ascertain the nature and extent of his authority. The burden of proving the scope of the agent's apparent authority was upon the school districts. *Mott Iron Works v. Metropolitan Bank*, 78 Wash. 294, 139 Pac. 36; 1 Mechem, Agency (2d ed.), § 743; Clark & Skyles, Agency, § 210.

The court was also requested to instruct the jury that an agent employed to make sales, and selling on credit, is not authorized to subsequently collect the price in the name of the principal, and payment to him will not discharge the purchaser unless he can show some authority in the agent other than that necessarily implied in a mere power to make sales. This instruction also should have been given in order that the jury might be advised that, if they found that Jansson had no apparent authority other than to make sales, payment to him would not discharge the debt.

Another instruction requested and refused was to the effect that the fact that an agent by whom property is sold has possession of the bill or account for such goods does not authorize the purchaser to make payment to him. This instruction embodied a correct statement of the law. 1 Mechem, Agency (2d ed.), § 864. It was a proper instruction to give in this case.

The judgment is reversed, and the cause remanded for a new trial.

MOUNT and PARKER, JJ., concur.

HOLCOMB, J. (dissenting)—I concur in the reasoning and conclusion reached in paragraph one of the majority opinion. That, it seems to me, determines the entire matter and renders most of the reasoning and all of the conclusions reached in the subsequent paragraphs of the opinion inconsistent and the matters therein discussed errors without prejudice. Under the express provisions and the spirit of our code (Rem. & Bal. Code, § 1752), requiring us to render judgment upon the merits, disregarding all technicalities, to my mind the merits are entirely on the side of respondents here, no substantial rights of appellant were so violated as to justify a reversal of the judgment, and the judgment should stand affirmed. I therefore dissent.

CHADWICK, J. (dissenting)—There being proof of agency, the errors complained of were without prejudice.