[No. 14809. *En Banc.* May 31, 1919.]

G. M. LAURIDSEN, *Respondent,* v. BOWDEN, GAZZAM & ARNOLD, *Appellant.*[1]

APPEAL (386, 387)—REVIEW—WAIVER OF ERROR. The waiver of a motion for new trial does not carry with it and condone whatever errors might have been considered under it, where they were raised and insisted upon under appellant's motion for judgment notwithstanding the verdict.

INSURANCE (10, 12)—AGENTS—RELATION—EVIDENCE. A letter in answer to an inquiry from a local insurance firm, quoting marine insurance rates on a prospective risk and expressing a hope to receive the order, does not constitute the local firm agents with power to cover the risk.

SAME (12, 13)—AGENTS—AUTHORITY. A letter offering to protect a shipment and issue a policy of marine insurance if advised of the name of the shipper, amount, cargo, boat, date, etc., written to a local insurance firm, does not authorize the firm to receive the premium and protect the shipment by an agreement for a policy.

SAME (30)—POLICY—EXECUTORY AGREEMENT—MARINE INSURANCE. A letter from insurance agents to a local insurance firm, offering to protect a prospective shipment and issue a policy of marine insurance, if advised of the name of shipper, amount, cargo, boat, date, etc., does not constitute a contract for insurance, although the local firm receipted for the premiums, where the shipment was lost before the data called for was received by the insurance company's agents.

SAME (10-12)—AGENTS—RELATIONS—POWERS. Upon an issue as to whether a local insurance firm, not agents of the insurer, was authorized, by correspondence, to protect a shipment or agree to the issuance of a policy of marine insurance, the insured, dealing with the firm at his peril, has the burden of proof, and cannot establish the agency by the evidence of the alleged agent, but must be considered to have read each of the communications as they took place.

[1]Reported in 181 Pac. 885.

Appeal from a judgment of the superior court for Clallam county, Alston, J., entered February 19, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Bogle, Graves, Merritt & Bogle,* for appellant, contended, among other things, that there was no presumption or competent proof of agency. 2 C. J. 919; *O'Daniel v. Streeby,* 77 Wash. 414, 137 Pac. 1025, L. R. A. 1915F 634; *Woodworth v. School District No. 2,* 92 Wash. 456, 159 Pac. 757; *Stewart v. Helvetia Swiss Fire Ins. Co.,* 102 Cal. 218, 36 Pac. 410.

The letters did not give authority to write the insurance. 2 C. J. 432-434; *St. Paul Fire & Marine Ins. Co. v. McMillan,* 194 S. W. (Tex. Civ. App.) 1157.

There was no ratification. 2 C. J. 477, 479, 484, 485, 928, 949.

There was no contract of insurance. Wood, Fire Insurance (2d ed.), § 5; Joyce, Insurance (2d ed.), §§ 43, 44, 45; 1 Cooley's Briefs on Insurance, p. 413; *Ogle Lake Shingle Co. v. National Lumber Co.,* 68 Wash. 185, 122 Pac. 990; *Roberta Mfg. Co. v. Royal Exchange Assurance Co.,* 161 N. C. 88, 76 S. E. 865; *Todd v. German American Ins. Co.,* 2 Ga. App. 789, 59 S. E. 94; *Hartford Fire Ins. Co. v. Trimble,* 117 Ky. 583, 78 S. W. 462; *Baldwin v. Phoenix Ins. Co.,* 21 Ky. Law 1090, 54 S. W. 13; *Davis Lumber Co. v. Scottish Union & National Ins. Co.,* 94 Wis. 472, 69 N. W. 156; *Michigan Pipe Co. v. Michigan Fire & Marine Ins. Co.,* 92 Mich. 482, 52 N. W. 1070, 20 L. R. A. 277; *Clark v. Insurance Co. of North America,* 89 Me. 26, 35 Atl. 1008, 35 L. R. A. 276; *Cleveland Oil & Paint Co. v. Norwich Union Fire Ins. Co.,* 34 Ore. 228, 55 Pac. 435; *Mooney v. Merriam,* 77 Kan. 305, 94 Pac. 263.

*T. F. Trumbull* and *Rose & Lewis,* for respondent, contended, *inter alia,* that there was a contract for in-

surance rendering the appellant liable.  22 Cyc. 1448, 1449, note 63; *Alabama Red Cedar Co. v. Tennessee Valley Bank,* 76 South. (Ala.) 980; *Rezac v. Zima,* 96 Kan. 752, 153 Pac. 500, Ann. Cas. 1918B 1035; *Fries-Breslin Co. v. Bergen,* 168 Fed. 360; *Arndt v. Miller, Daybill & Co.,* 95 N. Y. Supp. 604; *Criswell v. Riley,* 5 Ind. App. 496, 30 N. E. 1101, 32 N. E. 814; *Chenier v. Insurance Co. of North America,* 72 Wash. 27, 129 Pac. 905, Ann. Cas. 1914D 649, 48 L. R. A. (N. S.) 319; *Russell v. O'Connor,* 120 Minn. 66, 139 N. W. 148.

MITCHELL, J.—Respondent brought this action to recover damages for an alleged breach of contract to procure marine insurance upon a cargo of canned salmon to be shipped from Clallam county to Seattle in November, 1915.  At the close of respondent's proof, appellant challenged the sufficiency of the evidence and moved the court for a judgment of nonsuit. Again, at the close of all the evidence, appellant moved the court to direct the jury to return a verdict for appellant and against the respondent on the ground that the evidence failed to show any right of recovery on the part of respondent.  And again, after the verdict and at the proper time, appellant made and filed a written motion for judgment *non obstante veredicto.* Each of the motions was denied and an exception taken.  The jury returned a verdict in the sum of $2,500 for respondent, and from a judgment entered thereon, this appeal has been taken.

After the verdict had been received in the trial court, and after appellant had filed a motion for a new trial, it then, in writing, waived its motion for a new trial, but insisted upon its motion for a judgment *non obstante veredicto.*  Respondent now objects to the consideration by this court of appellant's assignments of errors, it being contended that the waiver of the mo-

tion for a new trial carried with it and condoned whatever errors, if any, might have been properly considered under the motion for a new trial. Whatever may have been the rule in this respect at common law and according to the early decisions in this state, under the present practice, statutes, and the later decisions of this court, the rule is otherwise. In the case of *Dyer v. Middle Kittitas Irr. Dist.*, 40 Wash. 238, 82 Pac. 301, a verdict was rendered for the defendant; plaintiff made a motion for a judgment notwithstanding the verdict and for a new trial. Before the motions were passed upon, the motion for a new trial was withdrawn by the plaintiff and plaintiff's rights were submitted upon the other motion. It was overruled and judgment was entered on the verdict. This court considered the sufficiency of the evidence to sustain the judgment and reversed the case, ordering a judgment for the plaintiff. Again, in the case of *Forsyth v. Dow*, 81 Wash. 137, 139, 142 Pac. 490, this court said:

"A motion for a judgment *non obstante veredicto* is a creature of the common law. It is now entertained only in so far as it has been defined and assigned a particular function in our code of procedure. . . . Nor does the statute make the motion in any way dependent upon or concurrent with a motion for a new trial."

Other cases to the same effect are *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59, and *Mattson v. Griffin Transfer Co.*, 90 Wash. 1, 155 Pac. 392.

The case was tried upon a second amended complaint. In the original complaint, appellant, the Pacific Marine Insurance Company, a corporation, and Davis & Woods, a copartnership, were all made defendants and served with summons and complaint. The complaint alleged, *inter alia*, that Davis & Woods

acted in the transaction as agents for appellant and the Pacific Marine Insurance Company, and recovery was sought for loss on a policy of insurance that Davis & Woods represented was or would be issued because of the receipt by them of the premium paid for the policy prior to the loss. The amended complaint was served and filed, continuing the case against all three defendants. A separate demurrer of the Pacific Marine Insurance Company to the complaint having been sustained, the case was dismissed upon motion of the plaintiff as to the insurance company, and also as to Davis & Woods. In the second amended complaint, the plaintiff sued, not on an alleged breach of contract of insurance, but on an alleged breach of contract to procure insurance.

The probative facts in the case are undisputed. Respondent was a resident of, and doing business in, Clallam county; J. M. Davis and P. J. Woods resided in Port Angeles, Washington, and were engaged in business as copartners, in the name of Davis & Woods; and appellant was and is a corporation of this state having its office and place of business in Seattle, and engaged, under its articles of incorporation, in the insurance business only as agent and broker for fire, marine and liability insurance companies. Appellant, as agent, represented, among other companies, the Pacific Marine Insurance Company, a foreign insurance company which wrote marine insurance in this state as an "Unauthorized Company," under § 75 of the insurance code of the state. Davis & Woods had no license from the state insurance commissioner to solicit insurance for the appellant or the Pacific Marine Insurance Company.

Respondent, intending to send two gas boats with cargoes of canned salmon from his cannery near the mouth of the Quillayute river, in Clallam county, to

Seattle, was solicited on November 20th by Mr. Davis, of the firm of Davis & Woods, to give them the application for the marine insurance on the cargoes. Davis told respondent he was the representative of the Pacific Marine Insurance Company, through Bowden, Gazzam & Arnold, of Seattle, and not being posted as to rates, he would write and find out what they were. Thinking there was insufficient time to attend to it by mail, Davis agreed to telegraph appellant. That after= noon (Saturday) Davis sent a telegram as follows:

"Port Angeles, Wash., Nov. 20, 1915.
"Bowden, Gazzam & Arnold, N. Y. Blk., Seattle, Wn.

"Write us best marine rate cargo salmon ex boats Albert and Rhododendron owned by Capt. Albert Johnson, this city, from cannery mouth Quillayute river, Clallam county to Seattle.        Davis & Woods."

Appellant's office was closed on Saturday afternoon and the telegram was not delivered to it until Monday, November 22d, which was the first appellant heard of the transaction. Davis's statement to respondent on November 20 that his firm was agent of appellant was unauthorized. On Monday Mr. Arnold, secretary of appellant, replied to the telegram he had just received, as follows:

"Seattle, Wn., 11:59 A. M., Nov. 22.
"Davis & Woods,
    "Port Angeles, Wn.

"Rate salmon thirty cents gasoline boats ten cents regular steamers see letter today.
                    "Bowden, Gazzam & Arnold."

On the same day, after sending the telegram, a letter was written and mailed from appellant's office as follows:

"Seattle, Wash., Nov. 22, 1915.
"Messrs. Davis & Woods,
    "Port Angeles, Wash.

"Gentlemen: Your wire of the 20th was not received until this morning owing to the fact that we

always close the office on Saturdays at 1 p. m., and we therefore wired you this morning as follows: 'Rate salmon thirty cents gasoline boats ten cents regular steamers, see letter today.'

"The rate on cargo salmon from cannery at mouth of Quillayute river, Clallam county, to Seattle, if by regular steamers is but 10 cents per $100, while if shipped by gasoline boats the rate is thirty cents per $100, and we trust these rates will enable you to secure the business.

"The above rates quoted are for cargo under deck and are always twice as much when loaded on deck.

"Thanking you for this inquiry, and hoping to receive your order for the insurance, we remain,

"Yours very truly,
"Bowden, Gazzam & Arnold,
"W. W. Turner,
"Manager Marine Insurance Dept."

On November 22d, upon receipt of the telegram of that date from appellant, Davis informed respondent of the rates. Respondent testified he then told Davis:

"to write a policy, and he (Davis) explained they did not issue a policy on marine insurance like they do on fire, they would give me what he called a slip or receipt for the money—a memorandum or something of that kind."

On or about November 24th, Davis & Woods wrote to appellant as follows:

"Port Angeles, Wash.
"Bowden, Gazzam & Arnold,
"Seattle, Wn.
"Dear Sirs: Refer your letter 22nd inst. Shall we issue applicant a slip and contract such as you mailed us in June last, per enclosed blanks; if so, kindly mail blanks and when we are advised as to cargo we will issue slip to assured and mail copy to you.

"Kindly advise us in this matter that there is no hitch.                Yours truly,
"Davis & Woods, Per J. M. Davis."

On November 27, appellant's office in Seattle wrote and mailed to Davis & Woods a letter as follows:

"Seattle, Wash., Nov. 27, 1915.

"Messrs. Davis & Woods,

"Port Angeles, Wash.

"Gentlemen: Replying to your letter of the 24th inst., have to state that if this order is for a single shipment it will not be necessary for you to issue an open policy contract with the assured. If you will advise us the name of the shipper, amount of shipment, nature of cargo, boat that it is shipped on, to and from what port and the date of sailing, we will protect the shipment for you and return one of our policies covering on the same.

"In our letter of June 5th, we sent you open policy for your own use, made out in triplicate. These were to have been signed by your firm and all returned to this office for the policy itself to be made out. Kindly do this now and we will then be able to complete the transaction.

"We have another agent up Sound that has taken care of several salmon shipments and we have issued policies from this office, on such information as requested above.

"Awaiting your advices, we remain,

"Yours very truly,

"Bowden, Gazzam & Arnold,

"W. W. Turner,

"Manager Marine Ins. Dept.

"Please return the open policy contracts signed, as requested."

In the meantime, about three o'clock on Saturday afternoon, November 27, respondent went to the office of Davis & Woods and gave them certain information relative to the shipments he wished covered by marine insurance. At that time respondent gave to Davis & Woods a check payable to them in the sum of $24.76, premium for insurance, and was informed by Davis & Woods the cargoes would be protected. Davis & Woods still retained the check at the time of the trial

of this case. About five or 5:30 o'clock in the afternoon on Saturday, November 27, Davis, by telephone, delivered to the telegraph company at its office in Port Angeles, to be forwarded to Seattle, a night letter as follows:

"Port Angeles, Wash., Nov. 27, 1915.
"Bowden, Gazzam & Arnold,
     "N. Y. Bldg., Seattle, Wn.
"Launches Albert and Rhododendron sailed today from cannery Quillayute river for Seattle with cargo salmon, cover with marine policy favor G. M. Lauridsen eighteen hundred ninety cases value seven thousand and fifty-five dollars on Albert, three hundred eighty-eight cases value twelve hundred dollars on Rhododendron number cases each variety furnished if you require them. Acknowledge by wire.
                         "Davis & Woods."

This telegram, being a night letter, was not received by appellant until Monday morning, November 29. It bears a notation by the telegraph company "9:15 P," but it does not show if that was the time it was received by the company at Port Angeles or at Seattle. About six o'clock in the afternoon, Saturday, November 27, the boat carrying the cargo of salmon went on the beach, causing the loss involved in this suit. The real damage to the cargo occurred, however, in the subsequent exposure of the goods to the weather and in transferring them to a rescue boat on November 29. Davis & Woods learned Saturday night, November 27, that the boat had gone on the beach. Davis knew his night letter of Saturday, November 27, would not reach appellant until Monday morning, November 29. On Sunday, November 28—the same day Davis received appellant's letter written the day previous, and after he knew the boat had gone on the beach—he signed and delivered to respondent a writing as follows:

"Mr. G. M. Lauridsen to Davis & Woods, Dr.   Dr. to premium marine insurance Rhododendron 1200 Albert 7055—8255 premium 24.76 paid 11-27-15. Davis & Woods, per J. M. Davis."

Monday morning, November 29, appellant wired as follows:

"Seattle, Wn., Nov. 29, 1915.
"Davis & Woods,
    "Port Angeles, Wn.
"Your night letter wire dated Saturday received this morning newspapers report Albert on rock Friday night cannot protect except subject loss already sustained what are the facts.
            "Bowden, Gazzam & Arnold."

Davis & Woods replied by wire as follows:

"Port Angeles, Wn., Nov. 29, 1915.
"Bowden, Gazzam & Arnold,
    "Seattle, Wn.
"Albert grounded Saturday not Friday another wire states facts.   Lauridsen gave us data Saturday afternoon on receiving same from Mr. Morse of the cannery, you advised us under date twenty-second you closed noon Saturday so we requested coverage by night letter consult correspondence re this shipment. Latest advices say no cargo lost and only damage if any is in handling.   We advised Lauridsen he was covered when data furnished.   We have solicited business for you per correspondence.   Where are we, answer.                    Davis & Woods."

And again on the same day Davis & Woods sent the following wire:

"Port Angeles, Wn., Nov. 29, 1915.
"Bowden, Gazzam & Arnold,
    "Seattle, Wn.
"Re insurance cargo salmon Lauridsen.   Albert went aground mouth of river while going to sea, Snohomish could not reach her but Lauridsen has word today from cannery man that cargo has been taken

ashore. Have requested this man to preserve best manner possible until representative arrives.

"Davis & Woods."

On November 30, appellant wrote to Davis & Woods as follows:

"Seattle, Wn., Nov. 30, 1915.

"Davis & Woods,
"Port Angeles, Wn.

"Gentlemen: Owing to the fact that the writer has not been well and is not feeling able to make the trip tonight to Port Angeles, I am going to write you instead.

"The telegram which was received by the writer Monday morning was a night letter which left Port Angeles at 9:15 p. m., and the same being a night letter, of course was not received at the Seattle office until Sunday morning. In view of your telegram of today in which you state you were advised by Mr. Lauridsen Saturday afternoon of this shipment, beg to state that if you had sent us an immediate day wire 'rush' it would have been telephoned to our homes and proper insurance procured. As it is, this wire came to hand Monday morning, giving us no opportunity to place any lines in excess of what any one company we represent can carry. The greatest amount we are permitted to write in any one company on gasoline boats is $2,500, but had we been advised before the sailing of the vessel we could have placed in this market almost any amount.

"I wish you would advise me immediately whether the entire cargo has been saved or not and what has been done with the same.

"I presume Mr. Lauridsen is saving all cargo in every way possible to protect his interests regardless of the question as to whether he is covered by insurance or not.

"I did hope to see you tomorrow morning in person and go into the matter of the loss carefully and aid you in arriving at what the loss was, if any, but owing to my indisposition I am unable to go up tonight. I wish you would write me fully the details

of this loss; what has been done with the salmon, and as near as you can estimate,—what the loss is going to be and what the character of the loss will be.

"We intend to do everything in our power to save your client and yourselves from any loss in connection with this matter that is possible for us to do, but as to admitting or denying liability so far as the insurance company is concerned at the present time, I am unable to say just what position we will be obliged to take until we know all of the facts in connection with the loss; how it happened; what was done, and amount of loss or damage, if any.

"The great difficulty in the whole situation is the fact that you did not send us a day wire as soon as you were advised that this cargo was to be shipped.

"Awaiting your advices and assuring you that we shall protect you in every way possible consistent with good underwriting, we beg to remain,

"Yours very truly,
"Bowden, Gazzam & Arnold,
"E. C. Arnold."

Notwithstanding other assignments of error made by appellant, only one need be noticed in our view of the case. That one is a question of agency. The whole theory and effect of the cause of action, as stated and relied on, is the breach of an alleged contract to procure marine insurance. Agency was not admitted, nor was it alleged or attempted to be proven to be a general agency. There were no direct negotiations between respondent and appellant, and the whole matter must be determined by the written and telegraphic correspondence between the firm of Davis & Woods and the appellant. In considering the correspondence it must be kept in mind that appellant had no intimation whatever that Davis & Woods had represented they were appellant's agents. The communications consisting of the two first telegrams and appellant's letter of November 22 gave Davis & Woods

11—107 WASH.

no authority to act as agents for appellant. There was nothing to show who Davis & Woods represented. Appellant, upon inquiry, simply quoted rates, and concluded its letter by saying it hoped to receive the order of Davis & Woods for the insurance—a statement insufficient to constitute the appointment of an agent. Had the letter gone so far as to express the hope that Davis & Woods would *receive* the order, it would yet have fallen short of the appointment of them as agents; for even that language would not have been inconsistent with appellant's position, then and now, to the effect that, before appellant could be bound, it must receive the order.

Concerning the letter of Davis & Woods of November 24 to appellant, it may be noticed, parenthetically, that in June, 1915, Davis & Woods attempted to place marine insurance for a person other than respondent, and for that purpose corresponded with appellant. It appears to have been a case in which insurance was not effected, although negotiations progressed to the extent of showing just what had to be done to bind appellant in that particular instance. In the present trial there was testimony, over appellant's objection, as to that transaction, which testimony was later stricken from the case. It clearly appears from their letter of November 24 that Davis & Woods recognized they had no authority to represent appellant, for they asked for advice as to what to do and how to do it. They asked if they should proceed according to a plan suggested on a former occasion and said: "If so, kindly mail blanks and when we are advised as to cargo we will issue slip to assured and mail copy to you." In other words, if it was their purpose to act for appellant, they not only sought such power, but asked for information as to details to be followed in

their conduct within the scope of that power. The letter shows that Davis & Woods were aware that appellant could not, and would not, be obligated until it had been heard from; and, as a fact, notwithstanding the promptness of appellant in answering the letter, Davis & Woods did not receive the answer until after the loss involved had occurred. Appellant answered the letter of Davis & Woods three days after it was written. If it was ever intended by appellant that Davis & Woods should represent it in this transaction, this letter alone expressed that intention. Special and not general authority was conferred. It said:

"If you will advise us the name of the shipper, amount of shipment, nature of cargo, boat that it is shipped on, to and from what port and the date of sailing we will protect the shipment for you and return one of our policies covering on the same."

There was no authority to Davis & Woods, in their name, to do anything to protect the shipment by insurance. The instructions were, "If you will advise us . . . we will protect," etc. If it be argued that this letter should be understood as giving authority to Davis & Woods to make the contract after collecting the data suggested and report to appellant, and that upon its receipt appellant would issue a policy that would relate back to the time Davis & Woods had purported to make the contract, that argument is successfully met in three ways. First, the language is not to that effect; second, if inference is to be indulged in, since there was at the date of the letter no information whatever to appellant sufficient to write the insurance, nor the time when the insurance would be required, the natural inference was that appellant had in mind there was sufficient time to get all the information necessary and write the policy before it was needed by the applicant for the insurance; and third, the whole

matter of the construction of the letter is immaterial because it was not received by Davis & Woods until the next day after the loss or damage to the cargo. Respondent, with some avidity, takes hold of the word "another," used in the letter where appellant said "we have *another* agent up sound," etc. But writing of a third person as *another agent* does not of itself prove the existence of, nor create, an agency in the person written to; while, on the other hand, the use of the word "another" in this instance is in harmony with the whole letter, as it referred to the addressees to the effect that the writer proposed to give them authority to do a given thing in a special manner.

This court, in the case of *O'Daniel v. Streeby*, 77 Wash. 414, 137 Pac. 1025, L. R. A. 1915F 634, called attention to and declared the general rule to be that third parties dealing with an agent must at their own risk ascertain both the fact and extent of the agent's authority, and the burden is on them to show that the acts of the agent were within the scope of his authority. The same rule was again declared in the case of *Woodworth v. School District No. 2*, 92 Wash. 456, 159 Pac. 757, wherein it was further said:

"Neither the fact of agency, nor the scope of the agent's authority, can be established by declarations of the alleged agent in the absence of the principal."

Such being the rule, respondent's rights are to be considered as if he had read each of the communications between Davis & Woods and the appellant at the time and as they took place.

On Monday morning, November 29, appellant, having learned through newspaper reports that one of the boats was already in trouble, and knowing that, by its letter of November 27, it had advised Davis & Woods how to proceed with reference to procuring

insurance, and upon receiving the night letter from Davis & Woods of the Saturday previous, promptly telegraphed Davis & Woods that it could not protect the cargo except subject to loss already sustained. The advice was cautionary and must be taken as intended to advise Davis & Woods that if they purposed to act under the authority given in appellant's letter of November 27 (now about due to reach Port Angeles), they must consider those instructions modified so as to apply to the cargo as it was at the time, and subject to any loss of the cargo that had already occurred. This telegram is inexplicable upon any other theory. It was to avoid any complication that might arise from any possible act on the part of Davis & Woods, under the letter of November 27, to now attempt to effect insurance which would relate back to a time prior to any damage or loss to the cargo. No responsibility would be assumed except subject to loss already sustained.

The two telegrams from Davis & Woods to appellant on November 29, and appellant's letter to them on November 30, do not alter the situation nor fix any liability on appellant. They amounted simply to a discussion between those parties. The letter contains no admission of agency on the part of Davis & Woods to bind appellant, nor of liability to respondent. There is no question of estoppel involved, for appellant never, directly or indirectly, advised respondent that Davis & Woods were its agents, nor has it received, or authorized any one else to receive, any money from respondent. There is nothing in appellant's letter of November 30, or in any other way, which amounted to a ratification of the representations of Davis & Woods to respondent that the cargo was protected by insurance. Indeed, ratification relates to an unauthorized act of an agent, while in this case

there is a failure of proof of agency existing at the time of the transaction; and besides, respondent by his pleading alleged an authorized act of an author- ized agent.

Appellant, up to and including the happening of that transaction between respondent and Davis & Woods, indispensable to respondent's right to recover from any one, had done nothing that either respondent or Davis & Woods could rely on, other than answer an inquiry about insurance rates and express the hope it would receive an order.

We are satisfied the evidence in this case is not sufficient to justify any judgment against the appellant.

The cause is reversed, and remanded with instructions to dismiss the action.

CHADWICK, C. J., MACKINTOSH, MOUNT, FULLERTON, and PARKER, JJ., concur.

MAIN, HOLCOMB, and TOLMAN, JJ., dissent.