[No. 15520.   Department Two.   January 19, 1920.]

HUGH F. WALKER *et al., Appellants,* v. M. E. CALLENDAR
*et al., Respondents.*[1]

FRAUD (4)—MISREPRESENTATIONS—MATTERS OF FACT OR OPINION. In an action for the fraud of a real estate agent in pointing out the wrong land to a prospective purchaser, the agent's statements that he was satisfied that it was the land in question were not, as a matter of law, mere expressions of opinion, where the agent claimed to have such a description and knowledge of the land as to enable him to identify it, although he had never before seen it.

PRINCIPAL AND AGENT (9)—EVIDENCE OF AGENCY—SUFFICIENCY. In an action against the owner of land for fraud of the agent in pointing out the wrong land, the evidence is insufficient to show that he was agent for the purpose of pointing out the land where it merely appears that he was the broker authorized to make the trade, and that the owner suggested that plaintiff go and see the land, and that the two had had considerable other business between themselves, and the owner was to pay part of the commission.

SAME (41)—AUTHORITY OF AGENT—DECLARATIONS OF AGENT. The authority of a real estate broker to show land belonging to his principal cannot be shown by declarations of the agent.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 10, 1919, upon granting a nonsuit, dismissing an action for damages for fraud.   Affirmed in part and reversed in part.

*Poe & Falknor* and *Chas. R. Lewis,* for appellants.
*A. B. Crowl* and *Peters & Powell,* for respondents.

BRIDGES, J. — In December, 1917, the appellants, Walker and wife, were the owners of a forty-acre tract of farm land located in King county, near the town of Enumclaw, and the respondents Callendar and wife were the owners of a tract of logged-off land located in Mason county, containing approximately 240 acres. During that month Callendar and Walker made a

[1] Reported in 187 Pac. 380.

trade and exchanged deeds. As a part of the trade, Callendar assumed and agreed to pay a mortgage which was on the Walker land, and, in addition thereto, to pay a bonus of some $300. The respondent H. B. Adams was a real estate agent in Seattle, and negotiated this deal. The appellants charge that, before the deal was consummated, Adams, who, they allege, was Callendar's agent, took Walker to Mason county for the purpose of showing him the Callendar land, and that while there showed him certain land which Adams represented was the Callendar land, and that Walker relied upon such representations; that, as a matter of fact, the land shown him was not the land owned by the Callendars, and was not the land subsequently deeded by Callendar to him, and that the land actually deeded was of very much less value than that which was pointed out as the land to be deeded, and that the appellants have been thereby damaged. At the close of plaintiffs' case, the court granted a nonsuit, and thereafter entered judgment dismissing the action, and it is from this judgment the appeal is taken.

There are two principal questions involved in this case: (1) Did Adams so point out the Mason county land as to authorize the appellants to rely upon his representations that it was the land owned by the Callendars; and (2), if the above question be answered favorably to the appellants, then was Adams the agent of the Callendars for the purpose of showing their land to the appellants?

The additional facts are as follows: Callendar testified that, some time prior to the trade involved in this action, the appellants listed their farm with Adams for sale; that Adams spoke to him about the land and asked him if he would not buy or trade for it. Callendar told him he had 240 acres of logged-off land in Mason county which he might trade for the farm, and

suggested that Walker go and see the land and make him, Callendar, a proposition. Some time thereafter Adams returned to Callendar and informed him that Walker was willing to go and look at the Mason county land. At that time Callendar gave Adams a tax receipt showing the description of this land. Some days after this conversation, Adams told Callender that Walker had been to look at the Mason county land and that he would make a trade, providing Callendar would assume the indebtedness on the Walker farm and pay $600 besides. Callender refused to pay $600, but finally agreed to pay a bonus of $250. Thereafter some change was made whereby the bonus was made a little larger and Callendar agreed to pay a part of Adams' commission. Walker, on behalf of the appellants, testified that, just before he and Adams went to look at the Callendar land, Adams told him that he had had a talk with Callendar and that the latter had told him that he could not go to the land, but that Adams should take Walker and show him the property; that next day he and Adams went to Mason county for the purpose of looking at the land. Adams agreed to pay Walker's expenses to Shelton if the deal were made. When they reached Shelton, Adams hired an automobile, with driver, to take them to the land. He gave a description of the land to the driver, who was fairly well acquainted with the different sections of land in that neighborhood. Adams told the driver that the land had a shack on it and a small amount of clearing. After driving for some distance, the automobile was stopped and the driver stated that, so far as he could tell, they were on the land mentioned by Adams; that, after Adams had looked around a little, he said to Walker: "Well, I am satisfied this is the property. This is the property all right." They then

walked over a considerable portion of the property and Walker concluded there were some four million feet of good timber and that the soil was good; Walker further testified that there were on the land two small shacks, a considerable clearing and a stump puller; that, after the parties had gone back to Seattle, he again questioned Adams as to whether or not he was sure they had been on the Callendar land, and was assured by Adams that they had been. On the trip to see the land, Adams told Walker that he had never before seen the property, and Walker understood that Adams wanted to get some one to point it out to him. Walker understood from Adams that Callendar had never seen his land. While they were on the land, Adams pointed out to Walker what he claimed to be the various lines of the Callendar land. It appears that, before they went on the land, Adams had given Walker to understand that there was a small shack on the land and some clearing and that a part of it was logged off, and that there was probably some timber left on it. Adams told him that he knew they were looking at the Callendar land because he recognized it from the description which Callendar had given him. It further appears that there was no shack on the land actually owned by Callendar. Walker further testified that there was an agreement whereby he, Walker, was to pay one-half of Adams' commission, and he understood Callendar was to pay the remainder.

In determining whether the nonsuit was properly granted, this court must look at appellants' testimony in that light which is most favorable to them. The respondents contend that, even under this rule, it must be held that appellant H. F. Walker had as much knowledge concerning the Callendar land as Adams had; that he could, as well as the latter, locate the land,

and that he knew that Adams could not and did not pretend to locate the land with any degree of accuracy, and that, consequently, any expressions of Adams to Walker to the effect that the latter had been shown the land owned by Callendar were nothing more than expressions of opinion upon which the appellants had no right to rely. We cannot follow respondents in this regard. There is, at least, some testimony which tends to show that Adams claimed to have such a description and knowledge of the land as would enable him to identify it and that he led Walker to believe that he could accurately point it out. We cannot, therefore, hold, as a matter of law, that Adams' assertions were merely expressions of opinions, or that Walker was not entitled to rely on them. They were assertions of fact about which Adams claimed to have information of which Walker was ignorant. In the case of *Grant v. Huschke,* 74 Wash. 257, 133 Pac. 447, this court stated the rule as follows:

"Representations, as of his own knowledge, of material and inducing facts susceptible of knowledge, made by a vendor in ignorance of the facts, but with the knowledge that the vendee is relying upon the representations as true and under circumstances reasonably excusing the vendee from investigating for himself, are actionable on the part of a vendee so relying to his injury."

Again, in the case of *Lawson v. Burnham,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880, this court said:

"The prevailing doctrine is that, if a person states as true, as of his own knowledge, material facts susceptible of knowledge, to one who relies and acts thereon to his injury, he cannot defeat recovery by showing that he did not know that his representations were false, or that he believed them to be true. The falsity and fraud consists in representing that to be true which he did not know to be true."

In the case of *Bradford v. Adams,* 73 Wash. 17, 131 Pac. 449, this court said:

"From numerous decisions of this court, it has become the settled doctrine that the vendor, when he undertakes to point out lands or boundaries to a purchaser, must do so correctly. He has no right to make a mistake except under penalty of having the contract rescinded or responding in damages."

Respondents, however, cite and greatly rely upon the case of *Stewart v. Larkin,* 74 Wash. 681, 134 Pac. 186, L. R. A. 1916B 1069. We think, however, that the law of that case is inapplicable to the facts of the case at bar. There it was sought to rescind and recover the purchase price on the ground that the landowner, in order to induce the purchaser to buy, falsely represented that the land would be irrigable by means of a canal or ditch as part of a certain irrigation project. None of the parties in that case knew anything about the proposed ditch except by hearsay. The landowner did not pretend to have any control over the location of the ditch, and the purchaser knew as much as the landowner about these matters. The fundamental difference between that case and this seems to us at once manifest. It is that the parties in that case were on an equality, while here they were not.

The conclusion to which we have come will require a reversal of the case as to respondent Adams, and also as to respondents Callendar and wife, unless the testimony fails to show that Adams was authorized to, and did, represent Callendar and wife as their agent in pointing out to appellant H. F. Walker the land in question. The testimony tends to show that Callendar had made Adams his agent for the purpose of making the trade in question; that he had given Adams a tax receipt showing a description of the land; whether the tax receipt was given by Callendar on his own initiative

or at the request of Adams, the record fails to disclose; that Callendar had told Adams that Walker had best go see the land and make a proposition; that Callendar had agreed to pay Adams a part of the commission for making the trade; that the two respondents had had considerable other business between themselves; that Adams had told Walker that Callender had told him (Adams) to show Walker the land and had given him (Adams) a somewhat particular description of the land whereby the same could be identified. This is all the testimony tending to show the agency. It is insufficient. The fact that Callendar made Adams his agent to make the trade and gave him a tax receipt showing the legal description of the land, and that Callendar and Adams had considerable other business together, but entirely distinct from this deal, would not make Adams Callendar's agent to show Walker the Mason county land. He was the agent only for the purpose of making the trade. Walker's testimony to the effect that Adams had told him that Callendar had authorized him (Adams) to show the land and that Callendar had given him (Adams) descriptions whereby the land could be identified, will not aid appellant. While that testimony may have been admissible as against Adams, it was not admissible as against Callendar. Agency cannot be proved in that way. This exact question was decided by this court in the case of *Woodworth v. School Dist. No. 2,* 92 Wash. 456, 159 Pac. 757. In that case one of the officers of the school district, over objections, was permitted to testify to certain declarations made to him by one Jansson, agent for the plaintiff, to the effect that he was authorized to receive and receipt for moneys on behalf of the plaintiff, his principal. Judge Main, speaking for the court, said:

"In other words, the declarations of Jansson as to the scope of his power and authority were received. This was error. Neither the fact of agency, nor the scope of the agent's authority, can be established by the declarations of the alleged agent in the absence of the principal. The fact that the agency may be admitted for one purpose does not make the admissions and declarations of the agent, which are not known to or acquiesced in by the principal, admissible for the purpose of establishing the scope or extent of his authority."

Many authorities are cited in that opinion in support of the views of the court.

In the case of *Gregory v. Loose,* 19 Wash. 599, 54 Pac. 33, the court said:

"It was also error, we think, to permit certain witnesses to testify as to what this supposed agent told them that appellant said or had concluded to do, with respect to this logging road. This was clearly hearsay testimony, and hence not admissible. Nor were the acts and declarations of Mathews competent evidence in proof of agency."

We therefore conclude that there was no proof that Adams was Callendar's agent for the purpose of showing Walker these lands, and that Callendar was not responsible for any false or misrepresentation made by Adams concerning the land.

The judgment is affirmed as to the respondents Callendar and wife and reversed as to respondent Adams.

HOLCOMB, C. J., FULLERTON, MOUNT, and MACKINTOSH, JJ., concur.