## GLOVER,
*Petitioner,*

*v.*

## ADULT AND FAMILY SERVICES
## DIVISION, et al,
*Respondent.*

### (No. 2-3401-YPR595-2, CA 15890)

613 P2d 495

Marilyn Lindgren, Oregon Legal Services Corporation, Hillsboro, argued the cause and filed the briefs for petitioner.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for the respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

Petitioner appeals from an order of the Adult and Family Services Division (AFSD) which denied her request for payment for certain dental work performed on her niece and nephew.

On January 17, 1979, petitioner requested medical assistance for her niece and nephew[1] from the Hillsboro Branch Office of AFSD. She advised the caseworker that her main purpose was to gain assistance in paying for dental work for the children who had never had dental care. The AFSD caseworker erroneously informed petitioner that the children were not eligible for assistance.

On February 2, after re-evaluation, the caseworker found the children eligible and opened an ADC grant for them effective January 17. Petitioner's understanding of what she was told by the caseworker was that she would need to obtain estimates of the work to be done from the children's dentist and that she would have to take the children for a Medicheck[2] screening.

On approximately February 23, she took the children to a dentist who examined them and gave petitioner invoices stating the work needed and the estimated cost. At the dentist's direction, petitioner took the invoices to the branch office. Petitioner recalls that the invoices were in their envelope in her car, and that she went to her caseworker and told her that the invoices were in her car. Petitioner claims that the caseworker told her to take the invoices to the children's Medicheck screening.

Petitioner then went to the Medicheck office, where the public health nurse who was doing the Medicheck screening advised her that she did not need to see the invoices. The nurse gave petitioner a Medicheck referral slip for the dentist, which petitioner took to the

[1] Requested assistance for a third child is not at issue in this appeal.

[2] " 'Medicheck' means the Division's program for Early and Periodic Screening, Diagnosis and Treatment for eligible persons under age 21." OAR 461-26-005(3).

[831]

dentist's office along with the envelope containing the invoices. The nurse did not direct petitioner back to the branch office or tell petitioner that prior authorization from the AFSD office was necessary before the treatment would be paid for.[3]

No one at the dentist's office looked at the invoices before proceeding with the work. After the treatment had been completed, it was discovered that the invoices had never been signed. The dentist sent them to the branch office where the caseworker denied approval for payment because the work had not been "prior authorized" in accordance with OAR 461-26-015, which states:

"* * * Orthodontic services, prosthodontic services for Medicheck screened clients below age 21, and services not detailed in the fee schedule for dental services as 'emergency services' must be prior authorized for payment by the Division."

Petitioner contacted the branch supervisor concerning the decision to deny payment and was told that, had the invoices been delivered to the office before the work had been done, the funds were available and payments for the services would have been approved.[4]

---

[3] The following statement from the nurse was entered into the record at the hearing:

" On February 23, 1979 I did Medicheck physicals on * * * [the children]. Carol Glover informed me that [her caseworker] * * * had sent her in with the estimates from * * * [the dentist] to be approved by me.

" I informed Mrs. Glover that I had nothing to do with approving the dentist's estimates and that I would do the Medicheck and refer the two children to * * * [the dentist] for dental exams and treatment if indicated.

" I referred both children to * * * [the dentist] for dental exams and treatment.

" Mrs. Glover was not told that she needed prior authorization by the caseworker and I was not aware this hadn't been done."

[4] Authorization will be granted where funds are available and treatment is determined to be medically necessary. OAR 461-05-907, 461-13-010. In this case the agency admitted that the request met these criteria for authorization, but denied the request because it was not made before treatment began.

Petitioner requested and was granted a hearing at which she recounted her experience as set forth above. She stated that she never understood that there was something in the envelope that had to be signed and that, after both the caseworker and nurse had expressed disinterest in the invoices, she had not known what to do with them, so she had simply turned them back over to the dentist.

The caseworker testified as follows about the instructions which she gave the petitioner.

"HEARING OFFICER: * * * When Mrs. Glover first applied for assistance, or sometime thereabouts, did she indicate that the children involved needed dental work?

"WITNESS: Yes, she did.

"HEARING OFFICER: O.K. Did you have any discussion about the procedure for that?

"WITNESS: Yes, I said first they needed a Medicheck, I go through this each intake process.

"HEARING OFFICER: O.K.

"WITNESS: Then they, then the doctor does the examination which she can use her card, her Medicaid card for that. Then, he sends us the invoices for approval. If it is not emergency work, it needs prior authorization. And that's the extent.

" * * * * *."

The caseworker also testified that she did not recall petitioner visiting her and telling her that she had the invoices; nor did she recall telling petitioner to take them to the Medicheck office. She did recall a telephone call from the dentist's office advising her that petitioner was there and requesting treatment for the children and her response that the work would have to be prior authorized.

*Cf. Price v. Adult & Family Services, infra,* where applicant made the request for authorization of psychiatric treatment before beginning treatment, but began treatment before approval was granted. We said that petitioner assumed the risk that the request would be denied by not waiting for authorization, but that she had not waived her right to have the request granted. In *Price,* the agency also argued a lack of funds for the treatment (an argument not raised in the case before us) and, finding that the agency had not made a record as to this matter, we sent the case back for a determination of the availability of funds.

The hearing officer concluded that, under either version of the facts, the denial was proper because "The requirement for prior authorization is clear and allows for no exceptions." Because of his interpretation of the rule, the hearing officer did not decide which version of the facts to believe. He did, however, make the following statement:

" * * * Even if her version of the facts is accepted, however, it must be concluded that claimant must bear some responsibility for the failure. She admits that she was made aware, at the time of application, of the requirement that estimates of nonemergency dental work be furnished. On the pivotal date in this episode, claimant, according to her recollection, took the estimates to the Branch Office, then to Medicheck, and then back to the dentist. Claimant knew that neither the Branch Office nor Medicheck personnel had looked at the estimates or approved them in any fashion. Claimant thus had no reasonable basis for believing that the work had been approved. She did not, however, inform the dentist that no one had, in fact, looked at the estimates or approved them. The Hearing Officer concludes, therefore, that claimant knew enough to know that she needed advance authorization and that no authorization had occurred before the work was done. Whatever blame might be placed for the absence of prior authorization must be apportioned between the parties.

"  * * * * * *."

The hearing officer's decision was affirmed by the agency through its chief hearing officer.

On appeal, petitioner admits AFSD's authority to promulgate the rule in question, see *Price v. Adult & Family services,* 42 Or App 403, 600 P2d 918 (1979), but argues that it erred in applying the rule to this set of facts.

We review the agency's decision pursuant to ORS 183.482(8)(c),[5] which provides that in a contested agency case

> "(c) The Court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

By not deciding whether to believe petitioner's story, the hearing officer failed to make the pivotal finding in this case. Whether or not petitioner's story is believed will determine the outcome of the case because, contrary to the hearing officer's above-quoted conclusion, if the petitioner's version of the facts is accepted, the law of estoppel will dictate that the agency make the requested payments for petitioner. The hearing officer's conclusion that the agency acted correctly in denying the request for payment is only supported by the record if it is decided that petitioner's version of the facts is not to be believed.

The theory of equitable estoppel is applicable against governmental agencies in this state. *Pilgrim Turkey Packers v. Dept. of Rev.,* 261 Or 305, 493 P2d 1372 (1972); *Johnson v. Tax Commission,* 248 Or 460, 435 P2d 302 (1967); *Boyle v. City of Bend,* 234 Or 91, 380 P2d 625 (1963).

---

[5] Defendant argues that petitioner has failed to raise any of the grounds for reversal or remand authorized by ORS 183.482(8). This argument is based on the fact that petitioner, in this appeal, framed her arguments in the language of ORS 183.482(8) as it was written prior to amendments by the 1979 legislature. The following statute was also added by the 1979 legislature:

> "(1) The reviewing court's decision under ORS 183.482 or 183.484 may be mandatory, prohibitory, or declaratory in form, and it shall provide whatever relief is appropriate *irrespective of the original form of the petition.* * * *" (Emphasis supplied.) ORS 183.486.

In light of this statute, we do not feel constrained from examining petitioner's claim under the new version of ORS 183.482(8) despite the fact that she did not, prior to her reply brief, refer to it.

Although the order was dated June 13, 1979, and the 1979 amendments did not become effective until October 3, 1979, the statute as it is written now sets forth our present scope of review. *Fish and Wildlife Dept. v. LCDC,* 288 Or 203, 209, 603 P2d 1371 (1979).

[835]

In *Pilgrim Turkey Packers v. Dept. of Rev., supra,* tax authorities were estopped to deny an exemption to a taxpayer who had mailed a proof of exemption to the Department of Revenue rather than the tax assessor with the proof thus reaching the assessor after the deadline, where the written instructions were ambiguous and someone in the Department of Revenue answered taxpayer's telephone inquiry with advice to send the form to the Department. The Supreme Court stated that:

> "The ambiguous nature of the form and the instructions were enough to mislead a reasonable person. * * * Plaintiff's assertion of an estoppel against the taxing authority is made even stronger by the added fact that defendant misinformed plaintiff as to the proper place for filing the claim to exemption." 261 Or at 310.

Similarly, in the Washington case of *West v. Dept. of Social and Health Services,* 21 Wash App 577, 586 P2d 516 (1978), the State Department of Social and Health Services was estopped from requiring a mother to contribute to the support of her children placed in foster care, where the Department was silent in the face of its duty to advise the mother of her financial obligation and the mother did not understand that she would incur a financial obligation when she signed her children over to foster care.

In the case before us, the agency is required to disclose eligibility requirements to applicants. OAR 461-03-060 and OAR 461-03-061.[6] In light of the fact

[6] OAR 461-03-060 provides in relevant part:

"The Adult and Family Services Division has specific responsibilities in relation to applicants for, and recipients of, public assistance. The branch office of Adult and Family Services shall explain the following to applicants and recipients:

"(1) The responsibilities of applicants and recipients which are specified in rule 461-03-050, and the rights of applicants and recipients which are specified in rule 461-03-061.

"(2) The eligibility requirements which must be met to establish and maintain eligibility, and the consequence of failure to comply with requirements.

that the agency is required to disclose eligibility requirements, the agency must be estopped from applying the prior authorization rule where no information or hopelessly confusing information has been given to the applicant as to how to meet the prior authorization requirement.

The hearing officer concluded that even under petitioner's version of the facts the blame should be "apportioned." However, in *Pilgrim Turkey Packers v. Dept. of Rev., supra,* the Supreme Court stated that the doctrine of estoppel would apply "where the taxing authorities were *in part responsible* for misleading the taxpayer into relying on a tax form which was superseded by an amended form." (Emphasis supplied.) 261 Or at 310. If believed, petitioner's version of the facts clearly presents a case for estopping the agency from applying its rule.

We remand for a determination of whether petitioner's statement is to be believed and for a new order based on that determination not inconsistent with this opinion.

Remanded.

"(3) The eligibility factors which must be verified and suitable documents to provide verification.

"(4) The methods which AFS may use with the permission of the applicant/recipient to obtain verifications the applicant/recipient is unable to provide.

"(5) The responsibility of AFS to administer public assistance programs in accordance with public assistance laws and regulations and within available funds.

"* * * * * *."

OAR 461-03-061 provides in relevant part:

"Applicants for, and recipients of, public assistance and social services have sepecific [*sic*] rights in relation to the Adult and Family Services Division. the branch office of Adult and Family Services Division shall inform every applicant and recipient of these right [*sic*] which are specified below:

"(1) The right to information about the financial and medical assistance and social service programs which are administered by the Adult & Family Services Division."