Argued and submitted May 19, affirmed November 10, 1982

KEYS,
*Petitioner,*
*v.*
ADULT AND FAMILY SERVICES
DIVISION,
*Respondent.*

(No. 2-2402-AB9307-5, CA A23615)

653 P2d 259

Kenneth R. Ryder, Marion-Polk Legal Aid Service, Inc., Salem, argued the cause and filed the brief for petitioner.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

Van Hoomissen, J., dissenting.

# RICHARDSON, P. J.

Petitioner, a recipient of aid to dependent children, seeks judicial review of a final order of the Adult and Family Services Division (AFSD) denying a request for payment of medical expenses related to sterilization. The issue is whether the agency is estopped to deny payment. We affirm.

Petitioner does not dispute the hearings officer's findings of fact. The material facts are quoted from the order.

"IV

"In March 1981, claimant discussed with her assistance worker the possibility of voluntary sterilization surgery. The worker advised the client that her treating physician had the necessary papers to complete should she decide to proceed with the surgery. Claimant made no further contact with the worker in this matter.

"V

"In April 1981, Adult and Family Service Division sent letters notifying Oregon physicians that effective 5-1-81, sterilization procedures would be listed as 'elective' in the AFS Physician Services Guide. (Elective procedures require reimbursement be prior authorized).

"VI

"The assistance worker did not advise claimant of the change in procedure and the prior authorization requirement.

"VII

"May 12, 1981, sterilization forms were completed at the doctor's office and on this date claimant signed the consent forms [OAR 461-14-30].

"VIII

"On June 19, 1981, the surgery was performed. AFS had not prior authorized the surgical procedure; payment for the surgery was subsequently denied by AFS.

"IX

"The treating physician requested a review by AFS Health Services Section. In the letter received by the Division on 9-29-81 the doctor stated

" 'This was at the time the procedure for doing tubals was changed from merely requiring the consent of the patient to receiving prior authorization from AFS. This somehow escaped our notice and we failed to get prior authorization * * *.' "

Petitioner argues that, because the caseworker did not inform her of the amended regulations making sterilization elective surgery that required prior authorization, the agency is estopped to apply the amended regulation. She contends that *Glover v. Adult and Family Services Division,* 46 Or App 829, 613 P2d 495 (1980), is controlling.

*Glover* is factually distinguishable from this case, and it is important to understand the factual predicate of our decision. Our holding in *Glover* was that, if the testimony of the petitioner was accepted, the agency was estopped to deny payment for the medical services. The petitioner had contacted an AFSD caseworker and had requested payment for dental work for her niece and nephew. It was ultimately determined that the children were eligible for an ADC grant and medical services. She was told by the caseworker that she would need to obtain estimates for the work to be done from the children's dentist. The dentist examined the children and prepared invoices stating the dental services needed and the estimated cost. He told the petitioner to take the invoices to the caseworker. The petitioner testified that she had returned to the caseworker and had told her she had the invoices but that the caseworker had told her to take the invoices to Medicheck screening.[1] The nurse at Medicheck screening told the petitioner that the nurse did not have to see the invoices and gave her a referral slip to the dentist. The petitioner took the children to the dentist, and the dental work was performed. The petitioner testified that she was not told by either the caseworker or the Medicheck nurse that she needed to take the invoices to the agency for prior authorization.

The agency denied payment because prior authorization had not been obtained. The petitioner was told by the agency, after the denial, that the papers were in proper

---

[1] "Medicheck" is the Division's program for early and periodic screening, diagnosis and treatment of eligible persons under 21 years of age.

form and that payment would have been authorized if authorization had been sought in advance. There was a conflict in the evidence. The caseworker testified that she told the petitioner to return the invoices for prior authorization. In response to that fact situation, we said in *Glover:*

"* * * In light of the fact that the agency is required to disclose eligibility requirements, the agency must be estopped from applying the prior authorization rule where no information or hopelessly confusing information has been given to the applicant as to how to meet the prior authorization requirement." 46 Or App at 836-37.

In contrast to the case at issue, in *Glover* the medical provider filled out the forms and supplied the information necessary for the agency to act on a request for prior approval. The failing in *Glover* was on the part of the agency in not informing the petitioner that she had to return with the invoices and submit them for prior approval. If the petitioner's testimony were accepted, the agency had misinformed her or given her incomplete information as to what it was necessary for *her* to do in order to get prior approval.

In the case at issue, as the findings of fact indicate, the assistance worker's response to petitioner's discussion concerning her intent to have sterilization surgery was to tell her that the physician had the requisite forms. That was an appropriate response. Pursuant to the agency's regulation, requests for payment, which include requests for prior authorization, must be submitted by the medical provider, and the agency provides the necessary forms to the various providers to request payment or prior authorization for payment. OAR 461-13-100 provides:

"(1) The provision of services, goods, or products to recipients of public assistance with the intent to request and accept payment from the Division for such services, goods, or products is a voluntary action on the part of the medical provider.

"* * * * *

"(3) Requesting and accepting payment for the provision of services, goods, or products constitute agreement on the part of the medical provider to abide by all rules and guidelines which have been, or may be, formally adopted

and published by the Division relating to medical provider payment."

Thus, the medical provider is made aware by the regulations that if payment is to be requested from the agency all the conditions imposed must be met. OAR 461-13-100(2) allows a provider to make arrangements with the recipient for payment if payment is rejected by the agency. However, the provider, by failing to follow the regulations, runs the risk that the chance of receiving payment from a public assistance recipient is slight and that failure to follow the regulations will probably result in total lack of payment for the services. It clearly appears from the regulations that the responsibility to determine if the recipient is eligible for the medical services is on the provider, not on the aid recipient. OAR 461-13-040(1).[2] There is also a substantial incentive for the medical provider to meet the requirements for reimbursement.

In this context, it is understandable that the assistance worker did not affirmatively inform petitioner that the regulations had changed and that prior approval of the surgery was necessary. She had already informed petitioner of the procedure, *i.e.*, that the physician had the appropriate forms to submit for payment. When the regulations were changed to require prior authorization, and the medical providers were informed of the change, it could logically be assumed that the provider would comply with the regulations. No additional information was necessary for petitioner after the regulations were amended. The same admonition would be appropriate, *i.e.*, that her treating physician had the necessary papers to complete.

Obtaining prior authorization for elective surgery is not simply a matter of petitioner's requesting the surgery and being told to go ahead. OAR 461-13-005(4) provides:

---

[2] OAR 461-13-040(1) provides, in relevant part:

"Eligibility status of the patient is of critical importance in assuring reimbursement for medical care or services provided AFS clients. Although payment for treatment has been authorized, it is the provider's responsibility to verify eligibility at the time medical services are rendered. Eligibility may be determined by checking the patient's Medical Care Identification Card or by assuring that prior authorization of payment (as defined in 461-13-041) is current * * *."

"(4) 'Prior authorization of Payment' means a request for payment that is submitted and approved before the service is performed. A prior authorization of payment request must include the following information:

"(a) Evidence of medical indication for the service and statement of the objective(s) of the treatment;

"(b) Estimated or usual and customary charge and duration of each treatment session;

"(c) Requirement for follow-up services, if any;

"(d) Any other information necessary to support the expenditure of public funds."

See also OAR 461-14-045. It is clear from the regulations that a request for prior authorization must come from the medical provider. The regulations require a clinical analysis and an estimate of the cost of the surgery or follow-up treatment. The clinical opinion and cost estimate cannot be provided by the recipient and it is necessary to send the recipient to the medical provider to complete the requisite forms. Under these facts there is no basis for estopping the agency from applying the prior authorization requirement.

Petitioner argues that the agency cannot shift the responsibility to inform petitioner of the prior authorization requirement to her physician. She contends that would be an unlawful delegation of responsibility that the regulations specifically impose on the agency. However, the agency did not delegate any of its responsibilities. Its responsibility was to inform petitioner of the appropriate procedure when she requested medical assistance. The appropriate procedure before and after the regulations were changed was to have the physician fill out the requisite forms. Thus, the physician was given the responsibility to complete the forms, OAR 461-13-041 and to verify petitioner's eligibility for the surgery by OAR 461-13-040. The agency met its responsibility; the doctor did not.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

Petitioner received an ADC grant from AFSD. In March, 1981, she discussed the possibility of sterilization surgery with her assistance worker. At the hearing, she testified that her assistance worker had informed her that

her physician, Dr. West, had the necessary forms and that she had been led to believe that AFSD would pay for the surgery on receipt of her doctor's claim. This advice was correct at the time it was given. She testified further that she did not see her worker again before the surgery was performed, because she understood from her worker that the matter was between her and Dr. West and that there was no necessity to see the worker again.[1] The worker did not testify at the hearing.

In April, 1981, physicians were notified by AFSD that, effective May 1, to qualify for payment sterilization surgery would require *prior* agency approval. Petitioner's assistance worker did not notify her of this change in AFSD's rules. In May, she completed the AFSD forms provided to her by Dr. West. In June, Dr. West advised her that everything had been approved and that "it was all O.K." The surgery was performed a few days later. When Dr. West submitted his claim, AFSD refused payment on the ground that prior authorization had not been obtained.

In *Glover v. Adult and Family Services Division,* 46 Or App 829, 613 P2d 495 (1980), we held that "[T]he theory of equitable estoppel is applicable against governmental agencies in this state."[2] We noted that AFSD is required under its own rules to disclose eligibility requirements to applicants,[3] and we concluded:

---

[1] Claimant's understanding was correct. Except for the change in its rules, AFSD would have paid for the surgery.

[2] The majority does not contest that equitable estoppel can be applicable against governmental agencies.

[3] OAR 461-03-060 provides in part:

"The Adult and Family Services Division has specific responsibilities in relation to applicants for, and recipients of, public assistance. The branch office of Adult and Family Services shall explain the following to applicants and recipients:

"(1) The responsibilities of applicants and recipients which are specified in rule 461-03-050, and the rights of applicants and recipients which are specified in rule 461-03-061;

"(2) The eligibility requirements which must be met to establish and maintain eligibility, and the consequence of failure to comply with requirements;

"(3) The eligibility factors which must be verified and suitable documents to provide verification;

" * * * * * ."

"In light of the fact that the agency is required to disclose eligibility requirements, the agency must be estopped from applying the prior authorization rule where no information or hopelessly confusing information has been given to the applicant as to how to meet the prior authorization requirement." 46 Or App at 836-37.

The majority attempts to distinguish *Glover* by arguing that in *Glover* the petitioner was actively misinformed, whereas here, petitioner was not actively misled.

My review of the record satisfies me that petitioner acted entirely in good faith and that she was, in fact, actively misled by AFSD's failure to advise her that its rules had been changed. She had a right to rely on her worker's advice and she did so. Her reliance was entirely reasonable under the circumstances. AFSD had a duty to speak, and it failed in that duty.

AFSD argues that petitioner's estoppel argument should be directed to Dr. West, who performed the surgery without prior approval, even though he had had notice of the change in AFSD's rules. The agency also argues that only Dr. West has standing to complain, because he is the real party interested in obtaining payment.[4] I find no merit in these arguments.

AFSD also argues that it cannot be required to inform petitioner of its new rule, because that would require sending all its clients a highly technical "Physician Services Guide." Nonsense! Petitioner discussed the surgery with her assistance worker in March, 1981, and she was assured

---

OAR 461-03-061 provides in part:

"Applicants for, and recipients of, public assistance and social services have specific rights in relation to the Adult and Family Services Division. The branch office of Adult and Family Services Division shall inform every applicant and recipient of these rights which are specified below:

"(1) The right to information about the financial and medical assistance and social service programs which are administered by the Adult and Family Services Division;

"(2) The right to apply for the programs of assistance and social services for which the individual believes himself/herself to be eligible;

" * * * * *."

[4] AFSD takes the position that the question of payment for the surgery is now a matter between claimant and Dr. West. *See* OAR 461-13-100. I find this proposition arbitrary and insensitive.

by her worker that AFSD would pay. The rule was changed only a month later. It would not appear to place too great a burden on AFSD to hold that the agency should have informed petitioner of the rule change before her surgery in June. I conclude that AFSD is estopped to apply its prior authorization rule here.

I also reject as a nonsequitur the hearings officer's conclusion that, because Dr. West was informed of the change in AFSD's procedures, that defeats *petitioner's* *estoppel* contention. OAR 461-03-060 and OAR 461-03-061 require AFSD to provide information to *applicants for and recipients of benefits.*

Nor do I comprehend the significance of the following reason given by the hearings officer:

> " * * * [T]he claimant admitted that the Branch worker had referred her to her physician for necessary papers to be completed. Whatever reliance claimant could have placed on an assistance worker's statement made in the month of March, it would have been prudent to reassess the payment procedure in a time frame closer to the date of surgery. It is an unreasonable burden to place upon an assistance worker to expect information be relayed to a claimant on a question made approximately six weeks earlier, and for which the worker would reasonably consider the matter concluded when claimant was referred to her physician."

The hearings officer concedes that the *assistance worker* could reasonably consider the matter concluded when petitioner was referred to Dr. West, however, the hearing officer suggests that petitioner could not. What kind of a double standard is that? The issue is not whether claimant was "prudent" but rather whether AFSD is estopped to deny payment.

I respectfully dissent.