[No. 59514-3.   En Banc.   December 2, 1993.]

MIKHAIL KRAMAREVCKY, *Respondent*, v. THE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES, *Petitioner*.

OLIVIA S. JINNEMAN, *Respondent*, v. THE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES, *Petitioner*.

*Christine O. Gregoire, Attorney General,* and *Robert L. Schroeter* and *Sarah J. Coats, Assistants,* for petitioner.

*Barbara Baker* of *Puget Sound Legal Assistance Foundation* and *Elizabeth Schott* and *Yvette Hall War Bonnet* of *Evergreen Legal Services; Schroeter, Goldmark & Bender* and *William Rutzick,* for respondents.

JOHNSON, J. — The Department of Social and Health Services (DSHS) seeks review of a Court of Appeals determination that DSHS is estopped from recouping public assistance benefits it overpaid to the respondents. Mikhail Kramarevcky and Olivia Jinneman, the respondents, both qualified for public assistance benefits and provided DSHS with accurate information concerning their eligibility. At some point, DSHS began sending both respondents and their respective families an overpayment of benefits for which they were not qualified. They received these overpayments solely as a result of error on the part of DSHS, and through no fault or error of their own. The Court of Appeals held that equitable estoppel applied under the facts of these cases to estop DSHS from recouping these overpayments. We agree and affirm.

I

In 1987, a suit entitled Chaplin v. Sugarman, cause 87-2-01239-2 (Jan. 2, 1990) was filed in Thurston County Superior Court. The plaintiffs were a class of persons who had received overpayments of Medicaid or family assistance benefits because of some DSHS error. They sought a declaratory ruling that administrative law judges (ALJs) have the authority to consider equitable estoppel as a defense to the Department's recoupment claims.

DSHS opposed the action. It argued ALJs do not have the authority to consider equitable estoppel in the context of public assistance overpayments, and federal law requiring DSHS to recoup overpayments precluded application of estoppel. The Department also argued its acts of overpaying benefits should be deemed ultra vires under State v. Adams, 107 Wn.2d 611, 732 P.2d 149 (1987), thus precluding any application of the doctrine of equitable estoppel.

The Superior Court issued a memorandum opinion ruling in favor of the plaintiffs and rejecting each of the Department's arguments. DSHS did not appeal this ruling. The Superior Court entered an order directing DSHS to inform all class members of their right to request a hearing and to assert the defense of equitable estoppel. Mikhail Kramar-

evcky and Olivia Jinneman were among the class of persons DSHS notified pursuant to the court's order.

Mikhail Kramarevcky is a refugee from the former Soviet Union. He arrived in the United States in April 1989 with his wife and minor son, Andre. The family speaks very little English and relied exclusively on DSHS for advice regarding their eligibility for public assistance. Between September 1989 and October 1990, the Kramarevckys received income and food assistance payments from DSHS under the Department's Family Independence Program (FIP).

In December 1989, Kramarevcky found a job and reported this to DSHS. He promptly gave the Department a copy of his first paycheck. DSHS failed, however, to follow its established procedures and did not send Kramarevcky monthly income report forms to complete and return. Uncertain as to what to do, Kramarevcky collected his wage receipts and brought them to DSHS in April 1990.

As a result of its failure to follow established procedures, DSHS did not take into account Kramarevcky's earned income when it computed his family's financial and food cash benefits during the 4-month period from February through May 1990. The Department later determined that Kramarevcky and his family had received an overpayment during this 4-month period of $1,375 in financial assistance and $262 in food assistance. DSHS sought to recoup this money from Kramarevcky.

An administrative hearing was held regarding these overpayments. Kramarevcky testified at the hearing with the aid of an interpreter. The ALJ found Kramarevcky had followed all proper procedures, had no reason to believe his eligibility had ceased, and could have been eligible for refugee job training reimbursement had he not received the overpayments. The ALJ also found both Kramarevcky and his wife are now partially disabled and have no income or resources with which to repay DSHS. The ALJ concluded each element of the defense of equitable estoppel had been met, and DSHS was estopped from recouping the overpaid amounts.

Olivia Jinneman, the other respondent in this case, received categorically needy medical assistance under the Aid to Families with Dependent Children (AFDC) program between January 1988 and June 1989. This program is administered by DSHS. Jinneman provided accurate information to DSHS concerning her son Brandon's date of birth. Brandon turned 18 years old on April 29, 1988. He was not attending school at the time of his 18th birthday, and the family unit became ineligible for the AFDC program as a result. DSHS continued, however, to send Jinneman medical coupons from May 1, 1988, through June 30, 1989. Upon discovering its error, DSHS terminated Jinneman's medical assistance and assessed a $1,759.94 overpayment against her for medical assistance received during that 13-month period.

An administrative hearing was held regarding these overpayments. Jinneman testified at this hearing. The ALJ found that "[h]ad [Jinneman] been appropriately advised of medical assistance eligibility, she would have obtained alternative care such as from women's clinics, utilized medicine alternatives, or used other medical providers such as the fire department". Finding of fact 3 (Dec. 6, 1990). The ALJ also found Jinneman's average disposable income for the 11 months preceding the hearing was $527 a month, an amount barely adequate to meet her needs. As in Kramarevcky's case, the ALJ found each element of the defense of equitable estoppel had been met, and ruled DSHS was estopped from recouping the overpayments it had made to Jinneman.

DSHS sought review of the ALJs' decisions from a review judge in both the respondents' cases. In both cases, the review judge adopted the ALJs' findings of fact, but reversed the conclusions of law. The review judge ruled DSHS was not estopped from recouping the overpayments from either Kramarevcky or Jinneman.

The respondents sought judicial review. The Court of Appeals granted direct review and consolidated the two cases. The court reversed the review judge and reinstated the ALJs' determinations that DSHS was estopped from

recouping the overpayments it made to the respondents. *Kramarevcky v. Department of Social & Health Servs.*, 64 Wn. App. 14, 822 P.2d 1227 (1992). DSHS sought review of the Court of Appeals decision, and this court granted review.

## II

■ The issue in these two consolidated cases is whether DSHS is equitably estopped under the facts of these cases from recouping public assistance benefits it overpaid to the respondents. The elements of equitable estoppel are: (1) a party's admission, statement or act inconsistent with its later claim; (2) action by another party in reliance on the first party's act, statement or admission; and (3) injury that would result to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission.[1] *Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318, *cert. denied*, 121 L. Ed. 2d 598 (1992). Equitable estoppel is based on the principle that:

> a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.

*Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975).

Equitable estoppel against the government is not favored. *See Finch v. Matthews*, 74 Wn.2d 161, 169, 443 P.2d 833 (1968). Consequently, when a party asserts the doctrine against the government, two additional requirements must be met: equitable estoppel must be necessary to prevent a manifest injustice, and the exercise of governmental functions must not be impaired as a result of the estoppel. *Shafer v. State*, 83 Wn.2d

---

[1] In addition to satisfying each of these elements, the party asserting the doctrine must be free from fault in the transaction at issue. *Mutual of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 651, 757 P.2d 499 (1988). A party may not base a claim of estoppel on conduct, omissions, or representations induced by his or her own conduct, concealment, or representations. *Mutual of Enumclaw*, 110 Wn.2d at 651 (citing 31 C.J.S. *Estoppel* § 75, at 453-54 (1964)). This principle is known as the "clean hands" doctrine. *Mutual of Enumclaw*, 110 Wn.2d at 650. The respondents in this case have met this requirement.

618, 622, 521 P.2d 736 (1974); *Finch*, 74 Wn.2d at 175. Courts should be most reluctant to find the government equitably estopped when public revenues are involved. *Harbor Air Serv., Inc. v. Board of Tax Appeals*, 88 Wn.2d 359, 367, 560 P.2d 1145 (1977).

A party asserting equitable estoppel against either the government or a private party must prove each element of estoppel with clear, cogent and convincing evidence. *Pioneer Nat'l Title Ins. Co. v. State*, 39 Wn. App. 758, 760-61, 695 P.2d 996 (1985) (equitable estoppel asserted against government); *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wn.2d 726, 853 P.2d 913 (1993) (equitable estoppel asserted against private party). Under this burden of proof, the trier of fact must be convinced the fact in issue is "highly probable". *Colonial Imports*, 121 Wn.2d at 735; *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973).

The Department has not placed the first two elements of equitable estoppel at issue. The Department apparently concedes its act of overpaying benefits to the respondents does satisfy the first element of estoppel, which involves an "act" inconsistent with a party's later claim. DSHS consequently has not raised the issue of whether its act of overpaying benefits is an ultra vires act to which equitable estoppel may not apply. *See State v. Adams*, 107 Wn.2d 611, 732 P.2d 149 (1987). DSHS did raise this argument before the Superior Court in Chaplin, and the Superior Court rejected it. See Chaplin v. Sugarman, Thurston Cy. cause 87-2-01239-2 (Jan. 2, 1990), mem. op. at 9. DSHS did not appeal the Superior Court's ruling and did not raise or brief the ultra vires question before the Court of Appeals or this court. The respondents argue collateral estoppel precludes reconsideration of issues decided by the Superior Court in Chaplin, and DSHS has not presented any briefing disputing this contention. This issue therefore remains for determination in an appropriate future case.

DSHS does argue, however, that the third element of equitable estoppel, which involves "injury" to the relying party, has not been established. The Department maintains that public

assistance recipients who received some overpayment for which they are later deemed substantively ineligible can never establish an "injury", as a matter of law, regardless of the particular facts of each case.

The Court of Appeals relied on the following two cases in determining that a party's substantive ineligibility is not a per se bar to establishing an "injury" for the purposes of equitable estoppel: *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 530 P.2d 298 (1975) and *West v. Department of Social & Health Servs.*, 21 Wn. App. 577, 586 P.2d 516 (1978), *review denied*, 92 Wn.2d 1032 (1979).

In *Wilson*, the plaintiff had the option of either seeking early retirement with his private employer or seeking another position with the employer in a different capacity. He chose retirement based on the employer's representation regarding the amount he would receive as a monthly pension. A year later, the employer discovered it had overcalculated the plaintiff's pension benefits and sought to recoup the overpayments. The court held equitable estoppel precluded this recoupment. *Wilson*, 85 Wn.2d at 82. The court stated:

the plaintiff properly assumed that the payments tendered to him were accurate and structured his life accordingly. To allow [the employer] to repudiate its original representations and to require the plaintiff to repay the excess payments at this time would be highly inequitable and prejudicial.

*Wilson*, 85 Wn.2d at 82. Like the respondents in these cases, the plaintiff in *Wilson* was not substantively eligible for the overpayments. However, this fact did not bar consideration of whether equitable estoppel applied under the facts of that case.

DSHS maintains *Wilson* does not apply because estoppel was sought in that case against a private party, not the government. However, the "injury" element applies under Washington law to claims of estoppel against *both* private *and* governmental entities. *Colonial Imports*, at 734 (private party); *Board of Regents v. Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987) (government). The court's interpretation of the "injury" element in *Wilson* therefore has relevance for

determining whether "injury" can be established in these cases.

The Court of Appeals also relied on *West v. Department of Social & Health Servs.*, 21 Wn. App. 577, 586 P.2d 516 (1978), *review denied*, 92 Wn.2d 1032 (1979) in interpreting the "injury" requirement. In *West*, a mother placed her children in foster care. At the time, she was not properly informed by DSHS that she would incur financial obligations as an immediate result of this placement. The Department later sought payment of this financial obligation. The Court of Appeals held the elements of equitable estoppel had been met, and DSHS was estopped from collecting payment from the mother. *West*, 21 Wn. App. at 580. The mother in *West* was not substantively eligible for cost-free foster care. However, this substantive ineligibility did not bar the court from considering whether equitable estoppel applied under the facts of the case.

DSHS argues *West* should not be considered because it is not consistent with this court's decision in *Griffin v. Department of Social & Health Servs.*, 91 Wn.2d 616, 590 P.2d 816 (1979). This contention lacks merit. In *Griffin*, parents placed their child in foster care and were informed at the time of their obligation to pay for this care and did not dispute their ability to pay. *Griffin*, 91 Wn.2d at 625-26. The court rejected the parents' later contention that equitable estoppel precluded DSHS from billing the parents for the child's care. *Griffin*, 91 Wn.2d at 631. Unlike the parents in *Griffin*, the mother in *West* was not informed of her support obligation at the time she placed her child in foster care. *West* is therefore distinguishable and not inconsistent with *Griffin*.

Both *West* and *Wilson* support the Court of Appeals determination that a party's substantive ineligibility to receive a benefit is not a per se bar to establishing an "injury" for equitable estoppel purposes, and we agree with this determination. We note that courts in other jurisdictions have also reached decisions consistent with this conclusion. *See, e.g., Fraga v. Department of Health & Rehab. Servs.*,

464 So. 2d 144 (Fla. Dist. Ct. App. 1984); *Kruse v. Department of Public Aid*, ___ Ill. App. 3d ___, 596 N.E.2d 743 (1992). The parties in these cases are therefore not barred from establishing an "injury" for the purposes of equitable estoppel.

■ DSHS also argues the Court of Appeals erred because it held a party can always establish the "injury" requirement merely through his or her obligation to *repay* the overpayments. This argument mischaracterizes the nature of the Court of Appeals holding. The Court of Appeals determined more was required to establish "injury" than the mere obligation to repay. The court's opinion indicates that parties meet the "injury" requirement if they reasonably rely on the actions of another and change their position to their detriment as a result of this reliance. *Kramarevcky*, 64 Wn. App. at 22.

This interpretation of the "injury" requirement is consistent with prior Washington cases. To establish an "injury" for equitable estoppel purposes, a party must establish he or she justifiably relied to his or her detriment on the words or conduct of another. *See Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 405, 823 P.2d 499 (1992). In Washington, injury, prejudice and detrimental reliance have been used interchangeably to express the requirement that a party asserting equitable estoppel must show a detrimental change of position. *State ex rel. Shannon v. Sponburgh*, 66 Wn.2d 135, 143-44, 401 P.2d 635 (1965); *Woodworth v. School Dist. 2*, 92 Wash. 456, 463, 159 P. 757 (1916); *Butler v. Supreme Court of Indep. Order of Foresters*, 53 Wash. 118, 124, 101 P. 481 (1909).

The Court of Appeals determined "injury" in the form of detrimental reliance has been established under the facts of these cases, and it relied on the ALJs' findings of fact in reaching this conclusion. In Kramarevcky's case, the ALJ found that had DSHS correctly accounted for his earned income, Kramarevcky could have been eligible for job training reimbursement through the Refugee Assistance Pro-

gram. *See* WAC 388-55 (refugee assistance). In Jinneman's case, the ALJ found that if Jinneman had been properly advised of her eligibility, she would have obtained alternative care, utilized medicine alternatives, or used other medical providers such as the fire department or women's clinics.

The review judge adopted the ALJs' findings in both Kramarevcky's and Jinneman's case, noting the findings were based on the ALJs' opportunity to assess the credibility of the witnesses. The Court of Appeals determined these findings were sufficient to establish detrimental reliance in these two cases, and DSHS has not sought review of this determination from this court. The "injury" requirement has therefore been met in these cases.

■■ DSHS next argues the Court of Appeals erred in determining the "manifest injustice" element had been met in these cases. The Department maintains the Court of Appeals erred because it inquired into the hardship the *individual respondents* would suffer if DSHS were allowed to recoup the overpayments. DSHS argues the court should have instead evaluated manifest injustice from the standpoint of *all* public assistance recipients who would suffer if DSHS were estopped because less money would be available for them.

The Department fails to cite any authority which lends support to the position that manifest injustice is to be determined by reference to third parties not involved in the particular proceeding. It is logical and appropriate for courts to inquire whether equitable estoppel is required to prevent manifest injustice *to the party seeking estoppel. See, e.g., Harbor Air Serv., Inc. v. Board of Tax Appeals*, 88 Wn.2d 359, 367, 560 P.2d 1145 (1977); *Hasan v. Eastern Wash. Univ.*, 24 Wn. App. 829, 834-35, 604 P.2d 191 (1979).

In analyzing whether the respondents met their burden of showing they would suffer a manifest injustice, the Court of Appeals considered the following factors: (1) the respondents did not have the resources to repay the debt without drawing on funds currently needed to meet their most basic needs; (2) the respondents provided DSHS with timely and accurate

information, and the overpayments resulted solely from the Department's error; (3) the overpayments involved a continuation of benefits for which the respondents had been eligible, and there was no reason they would have been alerted to the fact of overpayment; and (4) there was no evidence the respondents were abusing the public assistance system. *Kramarevcky*, 64 Wn. App. at 23-24. These factors establish the "manifest injustice" element has been met in these cases.

DSHS also argues the Court of Appeals erred in determining that application of estoppel in these two cases will not impair governmental functions. The Court of Appeals observed the overpayments in this case resulted from DSHS' error alone, and estoppel may provide an impetus for DSHS to more adequately monitor and control such payments. *Kramarevcky*, 64 Wn. App. at 26. DSHS strenuously objects to the Court of Appeals observation that estopping DSHS in these cases could improve rather than impair governmental functions. However, the Department has not cited adequate authority supporting the contention that the Court of Appeals otherwise erred in concluding estoppel would not impair governmental functions in these cases.

■ Finally, DSHS argues the respondents should be denied the defense of equitable estoppel as a matter of public policy. The Department points out it is required by statute to take necessary steps to recoup overpaid amounts from public assistance recipients. *See* 42 U.S.C. § 602(a)(22). DSHS maintains the application of equitable estoppel would be inconsistent with this statutory requirement, and therefore estoppel should not apply in this context. However, estoppel principles have been recognized in Washington for at least the past 100 years. *See, e.g., Spokane St. Ry. v. Spokane Falls*, 6 Wash. 521, 33 P. 1072 (1893) (city estopped from claiming it did not authorize building of railroad tracks). The court is therefore reluctant to find an abrogation of estoppel principles absent a clear showing of legislative intent. *See Ames v. Department of Labor & Indus.*, 176 Wash. 509, 513-14, 30 P.2d 239, 91

A.L.R. 1392 (1934). DSHS has not provided adequate support for the contention that such an intent has been evidenced in this context.

### III

DSHS raises additional arguments that it did not raise below, and we decline to consider these arguments. RAP 2.5(a); *Kennedy v. Seattle*, 94 Wn.2d 376, 383, 617 P.2d 713 (1980). We conclude equitable estoppel properly applies under the facts of these cases. The Court of Appeals is affirmed.

ANDERSEN, C.J., and UTTER, SMITH, and GUY, JJ., concur.

MADSEN, J. (dissenting) — In this case, the majority estops the Department of Social and Health Services (DSHS) from recouping benefits illegally and mistakenly conferred to the respondents. In doing so, the majority holds that substantive eligibility is not a requirement in establishing the injury element of estoppel against the government. The majority does so without addressing the related issue of whether the benefits constituted ultra vires acts to which estoppel does not apply. The majority's resolution of the case, however, *implicitly* determines this issue in a manner contrary to established precedent. A review of the rules controlling estoppel against the government indicates that the elements of estoppel against the government have not been established by the respondents.

### ANALYSIS

The elements of equitable estoppel are: (1) an act or admission by the first party; (2) an act by another party in reliance on the first party's act; (3) an injury that would result to the relying party if the first party were not estopped from repudiating the original act. *Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318, *cert. denied*, 121 L. Ed. 2d 598 (1992). This court has generally been reluctant to apply the doctrine of equitable estoppel against the government, especially where public funds are implicated. *Harbor Air Serv., Inc. v. Board of Tax Appeals*, 88 Wn.2d 359, 367, 560 P.2d 1145 (1977); *State ex rel. Bain v. Clallam Cy. Bd. of Comm'rs*, 77 Wn.2d 542,

548, 463 P.2d 617 (1970); *Finch v. Matthews,* 74 Wn.2d 161, 443 P.2d 833 (1968); *Wasem's, Inc. v. State,* 63 Wn.2d 67, 70, 385 P.2d 530 (1963). A party asserting estoppel against the government is held to a higher standard than a party asserting estoppel against a private entity. Such parties are additionally required to show that estoppel is necessary to prevent a manifest injustice and that the estoppel will not impair governmental functions. *Pioneer Nat'l Title Ins. Co. v. State,* 39 Wn. App. 758, 760-61, 695 P.2d 996 (1985). Finally, parties asserting estoppel against the government must prove each element of estoppel with clear, cogent, and convincing evidence. *Chemical Bank v. WPPSS,* 102 Wn.2d 874, 905, 691 P.2d 524 (1984), *cert. denied,* 471 U.S. 1065, 471 U.S. 1075 (1985).

In this case, not one of the three elements of general estoppel has been satisfied: an act by the government, an act in reasonable reliance by the respondents, and an injury to respondents. The majority recognizes the first two issues, but refuses to fully reach them stating "[t]he Department has not placed the first two elements of equitable estoppel at issue." Majority, at 744. While it is generally true that this court confines itself to issues raised in the petition for review, the elements of estoppel are all interrelated and, in this case, the majority's decision implicates these other issues in a manner contrary to established law. In any case, an appellate court has inherent authority to consider issues which were not raised on appeal, or even at trial, if necessary for a proper decision. *Falk v. Keene Corp.,* 113 Wn.2d 645, 659, 782 P.2d 974 (1989); *Wood v. Postelthwaite,* 82 Wn.2d 387, 510 P.2d 1109 (1973); *Siegler v. Kuhlman,* 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied,* 411 U.S. 983 (1973); RAP 12.1(b).[2] Finally, the parties have not shown that the applica-

---

[2] Where the parties did not raise the issue at trial, it is usually appropriate to request additional briefing or argument. *Crawford v. Wojnas,* 51 Wn. App. 781, 754 P.2d 1302, *review denied,* 111 Wn.2d 1027 (1988). Although this court may request additional briefing or reargument on issues raised by the court it may decline to do so for reasons of judicial economy. *State v. Danforth,* 97 Wn.2d 255, 643 P.2d 882 (1982). Here, such briefing is not necessary and reaching the issues

tion of estoppel is necessary to avoid a manifest injustice or that the estoppel will not impair government functions.

## A
### Respondents Were Not Injured Because They Were Never Substantively Eligible for the Benefits

Contrary to the majority's opinion, substantive eligibility is an essential requisite in establishing the injury element of estoppel. Washington courts use injury, prejudice, and detrimental reliance interchangeably to express the premise that there must be a detrimental change in position due to reasonable reliance on an act. *Butler v. Supreme Court of Indep. Order of Foresters*, 53 Wash. 118, 124, 101 P. 481 (1909); *Woodworth v. School Dist. 2*, 92 Wash. 456, 159 P. 757 (1916); *State ex rel. Shannon v. Sponburgh*, 66 Wn.2d 135, 143-44, 401 P.2d 635 (1965). While Washington courts have not yet decided the issue of substantive eligibility as a pre-requisite for finding injury, federal courts have required a public assistance recipient to be substantively eligible for the benefit received before they will find an injury for purposes of estoppel. *Heckler v. Community Health Servs. of Crawford Cy., Inc.*, 467 U.S. 51, 60, 81 L. Ed. 2d 42, 104 S. Ct. 2218, 2224 (1984); *Kennedy v. United States*, 965 F.2d 413 (7th Cir. 1992).

In *Heckler*, an agent of the Department of Health and Human Services informed a charitable health care provider that certain services provided for Medicare patients were reimbursable as reasonable Medicare expenses. The health care provider received reimbursement for several years until the agent discovered its error and requested reimbursement. The Supreme Court, in holding that estoppel could not be applied against the government, determined that the health

---

does not prejudice the parties because they were raised in the trial court and the parties had notice that the elements of estoppel must be met. *Alverado v. WPPSS*, 111 Wn.2d 424, 759 P.2d 427 (1988), *cert. denied*, 490 U.S. 1004 (1989).

care provider's injury was the inability to retain money that it should never have received. Thus, the *Heckler* Court stated, there was no "legal right, either vested or contingent, or suffered any adverse change in its status" that could be characterized as detrimental reliance. *Heckler*, 467 U.S. at 61-62.

In *Kennedy*, the plaintiff failed to pay federal taxes and settled the debt with the Internal Revenue Service (IRS) for $23,382.20. An agent for the IRS sent the plaintiff a document reflecting the settlement amount. The plaintiff modified the document indicating that this amount was sufficient to satisfy the debt and all potential penalties. Later, a revenue officer aide discovered that the correct amount owed was $52,043.70. The plaintiff sought to estop the government from seeking repayment.

The Seventh Circuit reasoned that the parties never had the authority to enter into the settlement agreement and that the plaintiff received a benefit "[he] should never have received in the first place". *Kennedy*, at 418. The court cited *Heckler* for the proposition that "an estoppel claimant [is required] to demonstrate he or she was statutorily entitled to a benefit before the claimant can argue detriment from loss of the benefit at the government's hands". *Kennedy*, at 418 n.2. The court ultimately held that the estoppel doctrine could not be used against the government "when the estoppel claimant's detriment is the loss of a windfall that could have never been statutorily effectuated through the process the claimant attempted to use". *Kennedy*, at 419.

Some state courts, most notably California and Oregon, have also distinguished between procedural eligibility and substantive eligibility in establishing the injury element of estoppel against the government. In *Lentz v. McMahon*, 49 Cal. 3d 393, 777 P.2d 83, 261 Cal. Rptr. 310 (1989), the California Court of Appeal reasoned:

> Estoppel against a county's assertion of purely *procedural* preconditions and limitations on benefits, when the county itself is responsible for the procedural default, will not defeat the underlying statutory policy of safeguarding accurate and

orderly administration of the welfare system. The policy considerations may well be different, however, when *substantive* preconditions of benefits are in issue.

*Lentz*, at 401. The court ascribed to the Supreme Court's view that it is " ' "the duty of all courts to observe the conditions defined by [the legislative branch] for charging the public treasury." ' " *Lentz*, at 402 (quoting *Schweiker v. Hansen*, 450 U.S. 785, 788-89, 67 L. Ed. 2d 685, 101 S. Ct. 1468 (1981)). The *Lentz* court held that to prevent the State from recouping public benefits where the recipient was not substantively eligible "might amount to a bestowal of benefits not contemplated by the Legislature".[3] *Lentz*, at 402.

In reaching its decision, the court relied on other state decisions elucidating the same distinction. *Lentz*, at 401. In particular, the court relied on *Thrift v. Adult & Family Servs. Div.*, 58 Or. App. 13, 646 P.2d 1358 (1982) and *Glover v. Adult & Family Servs. Div.*, 46 Or. App. 829, 613 P.2d 495 (1980). In *Glover*, the Oregon Court of Appeals estopped a welfare agency from applying a "prior authorization" requirement and thereby declining to cover costs for medical treatment. The court reasoned that the applicant was substantively eligible for the services and had attempted to obtain the prior authorization, but that the agency had failed to process the forms correctly. *Glover*, at 836-37.

Later, in *Thrift*, the Oregon Court of Appeals revisited the issue in a case where an applicant, through an agency error, received an overpayment of benefits for which she was not substantively eligible. The court noted, "[t]his is not a case where agency error caused the petitioner to lose a benefit to which she was otherwise entitled" and declined to estop the agency from seeking reimbursement. *Thrift*, at 17; *accord, Howard v. Employment Div.*, 63 Or. App. 227, 232-33, 663 P.2d 429, 432, *review denied*, 295 Or. 631 (1983); *see Allen v.*

---

[3]See analysis, *infra*, at pages 770-71, of *Davidian v. Southern Cal. Meat Cutters Union & Food Employees Benefit Fund*, 859 F.2d 134 (9th Cir. 1988) (use of estoppel prohibited where it would effectively create coverage contrary to terms of written agreement under Employment Retirement Income Security Act (ERISA)).

*Neal*, 217 Tenn. 181, 396 S.W.2d 344 (1965) (holding that party cannot establish injury simply by not receiving a benefit that he had no right to receive in the first place).

The majority here, like the Court of Appeals below, states that the law has changed in Oregon and points to a more recent Oregon Court of Appeals case. In *In re Tax Rate Assessment of Western Graphics Corp.*, 76 Or. App. 608, 710 P.2d 788 (1985) an agent of the Oregon Employment Division, acting within his authority, misinformed the party asserting estoppel that participation in a shared work plan would not affect the party's tax rate when, in fact, it raised the tax rate 75 percent higher. *Western Graphics*, at 612-13. The *Western Graphics* court distinguished between its earlier decision in *Thrift*, where the party asserting estoppel was not permitted to retain a windfall erroneously conferred by the State, and the case at hand where "[n]o benefits were lost" but the employer was required to pay higher taxes because of the misleading statements of the state agent. *Western Graphics*, at 613. The Oregon Court of Appeals held that estoppel applied to prevent the Oregon Employment Division from enforcing the higher tax rate. *Western Graphics*, at 616.

Although the court in *Western Graphics* did allow estoppel against the government, substantive eligibility was not an issue. There was no question that the party asserting estoppel was substantively eligible to participate in the shared work plan or that allowing the party to participate in that plan was within the Oregon Employment Division's authority. Rather, the issue was the government's ability to collect the higher taxes which the claimant would not have been responsible for were it not for the agency's affirmative misrepresentations. *Western Graphics* holds nothing more than that affirmative misconduct with respect to matters within an agency's authority may justify estoppel where sufficiently egregious. *Accord, Wiggins v. Barrett & Assocs., Inc.*, 295 Or. 679, 691, 669 P.2d 1132 (1983) (affirmative representations of government agent justified estopping government); *Pilgrim Turkey Packers, Inc. v. Department of Rev.*, 261 Or. 305, 493 P.2d 1372 (1972)

(ambiguous nature tax instructions misled party asserting estoppel and in turn supported applying estoppel against the government); *Johnson v. Tax Comm'n*, 248 Or. 460, 435 P.2d 302 (1967) (taxing authorities misled plaintiff into relying on tax form justified estopping the government from denying tax exemption). *Western Graphics* does not lend authority to the majority's conclusion that substantive eligibility is unnecessary for a finding of injury in estoppel.

*Western Graphics* is consistent with other Washington cases holding that estoppel may be applied against the government where the party asserting estoppel would not have been injured were it not for some affirmative act of the state agency within that agency's authority.[4] *Shafer v. State*, 83 Wn.2d 618, 624-25, 521 P.2d 736 (1974) (where Attorney General, acting within his authority, indicated that plaintiff should wait until all medical expenses had been incurred before filing claim, estoppel operated to prevent the State from asserting that claim was not timely); *Shannon*, 66 Wn.2d at 143 (where Liquor Control Board, acting within its authority, approved a change in location of licensee's premises, estoppel operated to prevent Liquor Control Board from reversing its decision).

This case does not involve the kind of affirmative misconduct that occurred in *Western Graphics*. DSHS never affirmatively informed Kramarevcky that he would continue to receive the same benefits even after he was employed. Neither did DSHS affirmatively state to Jinneman that she would continue to receive medical benefits after her son was through with school and 18 years old. Rather, in this case the State simply failed to reduce or cease benefits appropriately when the recipient was no longer substantively eligible.[5]

---

[4] *See West v. Department of Social & Health Servs.*, 21 Wn. App. 577, 586 P.2d 516 (1978), *review denied*, 92 Wn.2d 1032 (1979).

[5] It should be noted that courts have refused to apply estoppel even where the plaintiff was substantively eligible for a benefit and the government was partly responsible for a procedural error that resulted in the benefit not being conferred. *See, e.g., Schweiker v. Hansen*, 450 U.S. 785, 67 L. Ed. 2d 685, 101 S. Ct. 1468 (1981) (conduct of claims representative did not amount to affirmative misconduct justifying estoppel against Social Security Administration); *Montana*

The majority also relies on *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 530 P.2d 298 (1975) and *West v. Department of Social & Health Servs.*, 21 Wn. App. 577, 586 P.2d 516 (1978), *review denied*, 92 Wn.2d 1032 (1979) for the notion that some Washington cases suggest that substantive eligibility is not a requirement in estoppel cases against the government.

In *Wilson*, the plaintiff chose to retire early based on his private employer's representation of benefits under the employee retirement plan. After the plaintiff retired, the employer notified him that its earlier representation of the benefits was incorrect. The plaintiff sought to estop his former employer from reducing benefits under equitable estoppel. The court held that the parties were mutually mistaken as to the amount of the benefits under the retirement plan. It ruled that, although Westinghouse could not recoup excess benefits already paid, it could reduce subsequent benefits to the correct amount.

*Wilson* is inapplicable to the instant case. First, in *Wilson*, estoppel was being asserted against a private party rather than the government. The burden on a party seeking to assert estoppel against the government is much higher because the orderly administration of government functions and the maintenance of the public treasury are implicated. *Finch v. Matthews*, 74 Wn.2d 161, 169-70, 443 P.2d 833 (1968). Second, in *Wilson*, overpayment was not the only act that induced the reliance of the party asserting estoppel.

---

*v. Kennedy*, 366 U.S. 308, 314-15, 6 L. Ed. 2d 313, 81 S. Ct. 1336 (1961) (act of American Consular agent in refusing to allow pregnant mother to leave Italy did not comprise sufficient misconduct to justify estoppel of United States from relying on child's foreign birth); *United States Immigration & Naturalization Serv. v. Hibi*, 414 U.S. 5, 8-9, 38 L. Ed. 2d 7, 94 S. Ct. 19 (1973) (failure to publish rights under Nationality Act of 1940 did not estop United States from enforcing naturalization application deadline).

In any case, DSHS' overpayments of the benefits to the respondents, whether accompanied by affirmative statements or not, lacked all statutory authority. As will be explained in the analysis below, acts by state agencies that are wholly without legal authority are ultra vires and are not "acts" for purposes of estoppel. The affirmative misconduct analysis, therefore, does not apply in this case.

The supervisor had affirmatively represented the value of the retirement benefits to the party asserting estoppel who, in turn, forwent other benefit options available to him.

Likewise, *West* offers little insight into the present case because substantive ineligibility was not an issue. *West* concerned the ability of DSHS to enforce an obligation for the financial support of a child in foster care. In *West*, the appellant mother put her children in foster care and signed a document stating:

> I (WE) AM AWARE THAT MY CHILD IS TO BE PLACED IN FOSTER CARE, BY COURT ORDER OR BY MY REQUEST AND THAT FINANCIAL SERVICES OF DSHS WILL CONTACT ME IN RELATION TO FINANCIAL SUPPORT OF MY CHILD.

*West*, at 578. DSHS did not provide the mother of the children with any other notice that she would incur financial obligations by placing her children in foster care. Approximately 1 year later, DSHS served the appellant with a "Notice and Finding of Financial Responsibility". Appellant immediately removed her children from foster care and contested the debt. Upon reaching the court, she argued that DSHS was estopped from seeking payment because its notice was insufficient to apprise the appellant that she would have to pay for the foster care. The court held that the notice provided by DSHS was ambiguous and insufficient. The court estopped the agency from seeking payment.

The majority states that "[t]he mother in *West* was not substantively eligible for cost-free foster care." This statement misses the mark. Majority, at 746. The appellant in *West* was eligible to put her children in foster care, she just was not eligible for cost-free foster care. DSHS did not act beyond its authority in conferring the benefit to the mother. By failing to adequately inform her that she would incur some financial obligation for the care, DSHS acted in a manner that was binding on the State. Thus, appellant could successfully assert estoppel. The facts in *West* clearly render the case inapplicable in this instance. *See Harbor Air Serv., Inc. v. Board of Tax Appeals*, 88 Wn.2d 359, 367, 560 P.2d 1145 (1977) (where Department of Revenue, acting within its

authority, issued a correct, but misleading, statement limiting tax assessment, estoppel operated to prevent Department from later imposing additional taxes).

Finally, the majority asserts that injury was established in these cases in the ALJ's determination that, had the parties in this case known that their benefits would cease, they "would" or "could" have found benefits elsewhere. Majority, at 747-48. Elements established by virtue of speculation or conjecture are insufficient to warrant estoppel. *PUD 1 v. Cooper*, 69 Wn.2d 909, 918, 421 P.2d 1002 (1966). Even minimal showings of injury, or mere inconvenience, are insufficient for purposes of applying estoppel. *Federal Way Disposal Co. v. Tacoma*, 11 Wn. App. 894, 898, 527 P.2d 1387 (1974); *Coalition on Gov't Spying v. King Cy. Dep't of Pub. Safety*, 59 Wn. App. 856, 865, 801 P.2d 1009 (1990). In each of these cases, however, the administrative review judge found that evidence of detrimental reliance was insufficient.

In the case of Jinneman, the review judge held that "[i]n order for the ALJ to find that other programs would have been available to the Appellant, clear, cogent, and convincing evidence of the available assistance must be in the record." Review Decision (Jinneman), at 8. The review judge noted that the evidence was based only on "speculation" and "conjectur[e]", and held that "[i]n order to establish the element of injury, evidence in the record must exist to support a determination that other benefits were forfeited by the Appellant because of the receipt of the overpaid assistance and to show all or what part of the overpaid assistance could have been avoided." Review Decision (Jinneman), at 8.

Likewise, in Kramarevcky's case, the review judge reversed the ALJ's finding of injury which was based on the assumption that Kramarevcky "could have been eligible" for other aid. The review judge stated that in order for injury to be found from lost benefits, the availability of other benefits must be caused by the overissued assistance and the injury will only be equal to the amount of benefits proved lost "in the record by clear, cogent, and convincing evidence." Review Decision (Kramarevcky), at 4. The review judge reversed the

ALJ's conclusion of law because the record did not rise to the level of proof needed to show that alternative aid was available or that the amount of alternative aid would have been anywhere near the amount of the overpayment of benefits. Review Decision (Kramarevcky), at 4.

In conclusion, respondents cannot establish the injury element of estoppel because they were not substantively eligible for the benefits conferred in the first place. Although no Washington cases have dealt specifically with the issue, the majority's holding that substantive eligibility is not required when asserting estoppel against the government runs contrary to federal law and the law in other states. Furthermore, the respondents have failed to show by clear, cogent, and convincing evidence that they suffered an injury by forgoing other benefits or that the benefits allegedly forgone equaled the benefits improperly conferred in value.

### B
### The Act by DSHS Was Ultra Vires, and Estoppel Cannot Be Asserted Against the Government for Ultra Vires Acts

The majority fails to acknowledge that since the benefits in this case were not authorized by law, the acts of conferring them to the recipients were ultra vires acts to which estoppel may not apply. Furthermore, the majority's resolution of this case necessarily resolves the ultra vires issue contrary to established precedent.

It has long been the law in Washington that where a public agency acts beyond its legal authority causing injury to another, and that agency had no right to commit the act, the State, and public funds, cannot be held responsible. *Wendel v. Spokane Cy.*, 27 Wash. 121, 124, 67 P. 576 (1902). Such acts are deemed ultra vires and do not meet the first estoppel element of an act by the first party; thus, the doctrine of equitable estoppel cannot prevent the State from repudiating them. *State v. Adams*, 107 Wn.2d 611, 614, 732 P.2d 149 (1987). In other words, the State does not "act" and will not be held estopped based on the ultra vires actions of its offi-

cers. *Board of Regents of UW v. Seattle*, 108 Wn.2d 545, 552, 741 P.2d 11 (1987).

In this case, the Superior Court held simply that the actions of the State were "not ultra vires [acts] as that term was defined in *Board of Regents* . . . and cases cited therein." *Chaplin v. Sugarman*, Thurston Cy. cause 87-2-01239-2 (Jan. 2, 1990), mem. op. at 9. A closer reading of *Regents*, and an analysis of the ultra vires doctrine, however, reveals that the Superior Court's ruling was in error.

In *Regents*, the Attorney General for the State failed to appear at a condemnation proceeding brought in 1906 by the City of Seattle and the court entered a default judgment in favor of the city. *Regents*, at 547. Some 80 years later, the State argued it was "not bound to the acts of the Attorney General in the 1906 litigation" because those acts were "ultra vires". *Regents*, at 552. The court distinguished between irregular acts within an agency's authority and ultra vires acts wholly without authority. It reasoned that, although the State was not bound by ultra vires acts, "[a]n act of an officer which is within his realm of power, albeit imprudent or violative of a statutory directive, is not ultra vires."[6] *Regents*, at 552 (citing *Haslund v. Seattle*, 86 Wn.2d 607, 622, 547 P.2d 1221 (1976); *Seattle v. P.B. Inv. Co.*, 11 Wn. App. 653, 662, 524 P.2d 419 (1974)). The court held that the State was bound by the Attorney General's failure to appear in 1906. *Regents*, at 552.

The distinction between ultra vires acts and mere irregular acts for purposes of estoppel is not novel. A seminal case making this distinction is *Wendel*. In *Wendel*, a homesteader brought an action against Spokane County for damages caused by road construction. The county defended itself by arguing that it could not be held responsible for the unlaw-

---

[6]The phrase "violative of statutory directive" is somewhat misleading and *Regents* should not be read to hold that the State may actually violate a statute and not act ultra vires. *Webster's* dictionary defines "directive" as "a general instruction as to conduct or procedure; as subject to *directives* of his political party". (Italics mine.) *Webster's New International Dictionary* 738 (1956). Thus, acts that are "violative of statutory directive" should be understood as acts that violate procedure rather than acts that violate statute.

ful acts of its officers because such acts were ultra vires. *Wendel*, at 124. The court stated:

> [W]e must not lose sight of the distinction which exists between acts which are absolutely *ultra vires* by reason of the corporation having no authority to act on the subject-matter — it being wholly beyond the scope of its powers — and those acts which in a sense are termed *ultra vires,* where the body has jurisdiction of the subject-matter, but, in the execution of its authority, trespasses upon the rights of others.

*Wendel*, at 124. Since the construction of the road was clearly within the authority of the county, and the county could have constructed the road without complication had it been more careful, the county could not defend itself under the ultra vires exception. *Wendel*, at 124.

The distinction in *Wendel* was reiterated in *Haslund*. In *Haslund*, a developer brought an action against the City of Seattle for damages arising out of the issuance of an invalid building permit. The permit violated the building code because it was issued conditionally. The city argued that the permit was ultra vires because it violated the code and, therefore, the city could not be held responsible. The court distinguished between ultra vires acts and irregular acts:

> An ultra vires act is one performed without any authority to act on the subject. Here there is no plausible claim that the City did not have authority, through its building department, to issue building permits.

(Citation omitted.) *Haslund*, at 622 (citing *Wendel*). The court held that since the city could have issued a valid permit "the defense of ultra vires action is unavailable to [the city]". *Haslund*, at 622.

In *P.B. Inv. Co.*, 11 Wn. App. at 654, the court considered a 1920 Seattle ordinance authorizing an irrevocable grant to use city streets. The City of Seattle argued that such a grant prejudiced the public, was beyond the city's authority and was, thus, ultra vires. The court held that although the grant was improper, the city could have accomplished the same by vacating the unneeded portion of the street thereby causing title to revert to the abutting property owner. The

court held that "[i]nasmuch as the City had the power to do what it did through the vacation process, it cannot be said that the City's act was ultra vires, . . . even though the procedure it followed — the granting of a private use by ordinance — was itself defective." *P.B. Inv.*, at 663; *see also Noel v. Cole*, 98 Wn.2d 375, 379, 655 P.2d 245 (1982) (estoppel applied against Department of Natural Resources to enforce timber contract even though environmental impact statement was lacking where contract was not ultra vires, but merely unauthorized and irregular, and where government would be unjustly enriched); *Shafer*, 83 Wn.2d at 618 (Attorney General's advice to delay filing of claim was improper but within its authority and constituted grounds to estop the State from arguing claim was untimely); *Finch v. Matthews, supra* (action in exchanging existing right of way for more convenient right of way without going through proper statutory methods was not ultra vires but merely unauthorized and irregular).

These cases demonstrate that agency actions that are improper but within an agency's legal authority are not ultra vires, but are irregular and unauthorized and do not bar estoppel. Conversely, acts wholly beyond an agency's authority are ultra vires and estoppel may not apply. *State v. Adams, supra*; *Washington Educ. Ass'n v. Smith*, 96 Wn.2d 601, 638 P.2d 77 (1981); *Arbogast v. Westport*, 18 Wn. App. 4, 567 P.2d 244, *review denied*, 89 Wn.2d 1017 (1977).

In *Adams*, a payroll computer had been programmed to give state employees a raise that was expected to be passed by the Legislature. The Legislature did not approve the raise, but the computer put it into effect anyway. The State then attempted to seek reimbursement from the employees who were overpaid and the employees asserted estoppel against the government. The court held that since neither the State nor the computer had authority to give the employees a raise, its acts must have been ultra vires and the equitable estoppel argument could not be applied against the government to stop it from seeking reimbursement. *Adams*, at 614-15.

In *Washington Educ. Ass'n*, the agency had instituted a voluntary payroll deduction to facilitate contributions to political action committees. Pursuant to an attorney general opinion which held that the agency had no statutory authority for such deductions, the agency terminated the deductions. *Washington Educ. Ass'n*, at 604. The political action committees sought to estop the agency from terminating the deductions. The court held that, since the agency had no authority to make such deductions, its acts were ultra vires and equitable estoppel could not apply. *Washington Educ. Ass'n*, at 610.

In *Arbogast*, the Westport Police Department terminated the plaintiff's employment as dispatcher. At the time the plaintiff was discharged she was within a 1-year probationary period for new employees. The plaintiff argued that the probationary period was invalid and that only the mayor could discharge her. The mayor promptly discharged her and the plaintiff brought suit. The mayor then offered the plaintiff permanent employment and placed the plaintiff on a 45-day suspension while the city evaluated the legality of the probationary period. Subsequent to the suspension period, the mayor determined that the probationary period was legal and again terminated the plaintiff. *Arbogast*, at 6. The plaintiff sought to estop the mayor, arguing that she had turned down other employment opportunities during the suspension period. The plaintiff cited *Haslund* as support for her argument and the court stated:

> Appellant argues that *Haslund v. Seattle*, 86 Wn.2d 607, 547 P.2d 1221 (1976), should determine the outcome of this case. In *Haslund*, the city building inspector issued a building permit and attached unauthorized conditions to it. The city was estopped from denying the validity of the permit, notwithstanding the illegality of the conditions. But in that case, the building inspector had the power to issue permits. He merely did so in an unauthorized manner. The present case in not analogous. Here the mayor had no authority to waive the 1-year probation period. It would be a different situation if he did have such authority but exercised it in violation of the ordinance's guidelines or added unauthorized conditions to the waiver.

*Arbogast*, at 8. The court held that the mayor's acts were ultra vires and that the plaintiff could not apply estoppel. *Arbogast*, at 7; *see also Barendregt v. Walla Walla Sch. Dist. 140*, 26 Wn. App. 246, 611 P.2d 1385 (state penitentiary supervisor of education acted ultra vires when he committed the State to indemnifying the school district for wrongful termination liability), *review denied*, 94 Wn.2d 1005 (1980); *Fitzgerald v. Neves, Inc.*, 15 Wn. App. 421, 550 P.2d 52 (1976) (prosecuting attorney's promises to "take care of the problem" were without any statutory authority and, therefore, ultra vires).

Under the preceding case law, a governmental agency acts ultra vires when it acts beyond its authority, and acts irregularly where it acts improperly but within its authority. In the two cases at hand, DSHS had no statutory authority to confer the benefits to the plaintiffs. Its acts were, therefore, ultra vires.

In Kramarevcky's case, DSHS should have reduced benefits when it began receiving Kramarevcky's paycheck stubs from his new job. DSHS had no authority to offer Kramarevcky the same benefits after he started his job. Likewise, Jinneman should not have received medical coupons for her son after he turned 18. In both of these cases, DSHS could not have offered the benefits legally under any other authority. These are not cases like *Haslund*, or *P.B. Indus.*, where the agency could have accomplished the same result legally through different means. Rather, DSHS simply acted beyond its statutory authority and its acts were, therefore, ultra vires.

The majority justifies its failure to reach the ultra vires issue on the fact that DSHS did not place the "act" element at issue on appeal. Since benefits paid to substantively ineligible recipients are by nature ultra vires acts, however, DSHS implicitly raised the ultra vires issue by placing the "injury" element at issue on appeal. Moreover, although the majority states that the ultra vires issue "remains for determination in an appropriate future case" it implicitly determines the issue

by holding that estoppel may be asserted against the government for overpayments even where the recipient is substantively ineligible. Majority, at 744-45. Substantive ineligibility goes to the heart of whether the governmental act was ultra vires.

A benefit that is paid out to a recipient by an agency wholly without statutory authority is an ultra vires act. Such a recipient is also per se substantively ineligible for the benefit because no statute authorized the recipient to receive, or DSHS to confer, the benefit. Therefore, to hold that estoppel may be asserted against the government, even where the recipient was substantively ineligible, is to hold that estoppel may be asserted against the government even where it acts ultra vires.

As explained above, the majority relies on *Wilson* for the assertion that substantive eligibility is not a requirement in estoppel cases. The majority's use of *Wilson* is indicative of its failure to recognize the applicability of the ultra vires issue, and the necessity of that issue's resolution to this case.

DSHS argued in its brief that *Wilson* does not apply in the context of substantive eligibility because it involved a private party, not the government. The majority dismisses this argument by pointing out that "the 'injury' element applies under Washington law to claims of estoppel against *both* private *and* governmental entities." Majority, at 745. This statement again misses the mark. While it may be true that injury is an element of estoppel even against the government, as was the case at the time *Wilson* was decided, the ultra vires defense to estoppel only applies in the governmental context. *Noel*, 98 Wn.2d at 379; former RCW 23A.08-.040; Laws of 1965, ch. 53, § 7 (repealed 1989; current version RCW 23B.03.040).

The majority's holding that substantive eligibility is not a requirement for establishing the injury element of estoppel is, thus, clearly incorrect when a party is asserting estoppel against the government. In so holding, the majority fails to recognize that overpayments of public benefits to persons

substantively ineligible for the benefits are ultra vires acts to which estoppel may not apply.

## C
## Respondents Could Not Have Reasonably Relied on the Benefits Because They Are Imputed With a Knowledge of the Law When Asserting Estoppel Against the Government

In addition to the majority's failure to recognize the nuances of the injury element of estoppel applied against the government, the majority also declines to recognize that the reliance element of estoppel is treated differently in a governmental context. The majority's resolution of the reliance element runs contrary to law.

Absent fraud or misrepresentation, only those who have reasonably relied upon inconsistent acts or representations of the party against whom estoppel is asserted may assert estoppel. *Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 281, 461 P.2d 538 (1969); *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 530 P.2d 298 (1975); *Concerned Land Owners v. King Cy.*, 64 Wn. App. 768, 827 P.2d 1017, *review denied*, 119 Wn.2d 1008 (1992). "Reliance is justified only when the party claiming estoppel did not know the true facts and had no means to discover them." *Marashi v. Lannen*, 55 Wn. App. 820, 824-25, 780 P.2d 1341 (1989).

Additionally, those who deal with the government may not reasonably rely on conduct of government agents that is contrary to law, even where the agency is clothed with "such indicia of authority that it would be estopped if it were a private person". *State v. O'Connell*, 83 Wn.2d 797, 825, 523 P.2d 872, 77 A.L.R.3d 874 (1974). Parties seeking to estop the government are imputed with a knowledge of the law. "It is also the generally accepted rule that the [government], . . . cannot be estopped by unauthorized, illegal, or fraudulent acts or statements on the part of its officers and agents, even though benefits to the public have accrued and been accepted." *Bennett v. Grays Harbor Cy.*, 15 Wn.2d 331, 341, 130

P.2d 1041 (1942). "The rule is that persons dealing with such officers must, at their peril, ascertain the scope of their authority.' " *Bennett*, at 342 (quoting 2 E. McQuillin, *Municipal Corporations* § 519 (2d ed.)); *accord, Heckler v. Community Health Servs. of Crawford Cy., Inc.*, 467 U.S. 51, 81 L. Ed. 2d 42, 104 S. Ct. 2218 (1984); *Clubb Oil Tools, Inc. v. M/V George Vergottis*, 460 F. Supp. 835 (S.D. Tex. 1978); *Noel*, 98 Wn.2d at 379; *Edwards v. Renton*, 67 Wn.2d 598, 605, 409 P.2d 153, 33 A.L.R.3d 1154 (1965); *Barendregt v. Walla Walla Sch. Dist. 140, supra.*

In *Barendregt*, the Washington State Penitentiary entered into an agreement with the school district to hire teachers for the penitentiary. The penitentiary later sought to reduce its teaching staff and did not renew one of the teacher's contract. The teacher, Barendregt, brought suit against the school district for improprieties in the nonrenewal procedures under state law and prevailed. The district then filed a third party complaint against the state penitentiary. It alleged that the supervisor of penitentiary education had assured the district that if it incurred any expense because of Barendregt's nonrenewal, the State would indemnify the district. The district argued that the State was estopped from denying the indemnification. The district prevailed at trial and the State appealed.

In holding that estoppel could not apply against the State, the Court of Appeals held that the school district could not have reasonably relied on the superintendent's representations. *Barendregt*, at 251. The court explained that " '[w]hen dealing with an officer . . . of [the State] . . ., one must be presumed to have knowledge of the official's power and authority, and when one deals with them in a manner not in compliance with the law one does so at one's peril." *Barendregt*, at 250 (quoting *State ex rel. Bain v. Clallam Cy. Bd. of Cy. Comm'rs*, 77 Wn.2d 543, 549, 463 P.2d 617 (1970)).[7]

---

[7] This rule is also the case in Oregon where courts have held that parties dealing with the government are imputed with a knowledge of the extent of the government agent's authority.

"Although a private agent, acting in violation of specific instructions, yet within the scope of his general authority, may bind his principal, the rule as

Like the school district's reliance in *Barendregt*, the parties' reliance on the benefits provided by DSHS was not reasonable. First, the facts suggest that the parties knew that they should not have been receiving benefits. In Kramarevcky's case, it seems clear that he was aware that his benefits would be affected if he found a job, otherwise he would not have sent his paycheck stubs to DSHS. While the findings of fact are silent as to what information was provided to Jinneman when she applied for the Aid to Families with Dependent Children (AFDC) benefits, it is highly probable that she was informed that only dependent children under the age of 18 are eligible. Second, regardless of their actual knowledge, under the above case law, the parties are imputed with a knowledge of the law and any reliance on their part was unreasonable because DSHS had no authority to confer such benefits. Kramarevcky should be held to know that his benefits are affected if he secures employment. Jinneman should be held to know that she was eligible for benefits only because her son was under 18 years of age and in school.

## D
### Respondents Cannot Show the Additional Elements of Manifest Injustice and No Impairment of Governmental Functions

In holding that substantive eligibility is not a requirement of proving the injury element of estoppel, the majority implicates additional elements of estoppel which apply only where parties assert estoppel against the government.

Requiring the respondents to repay the debt here would not result in a manifest injustice because the respondents were never substantively eligible and because they have not

to the effect of the like act of a public agent is otherwise, for the reason that it is better that an individual·should occasionally suffer from the mistakes of public officers or agents, than to adopt a rule which, through improper combinations or collusions might be turned to the detriment and injury of the public."
*Wiggins v. Barrett & Assocs., Inc.*, 295 Or. 679, 691, 669 P.2d 1132 (1983) (quoting *Whiteside v. United States*, 93 U.S. 247, 256, 23 L. Ed. 882 (1876)).

shown injury by way of forgoing other benefits. Furthermore, estoppel in this case will provide benefits contrary to law and will also prevent the State from recouping overpayments made to ineligible recipients.

As explained, parties asserting estoppel against the government must prove each element of estoppel with clear, cogent, and convincing evidence, and must also show that failure to apply estoppel will result in a manifest injustice and that the estoppel will not impair governmental functions. *Finch v. Matthews, supra; Pioneer Nat'l Title Ins. Co. v. State*, 39 Wn. App. 758, 760-61, 695 P.2d 996 (1985). The application of estoppel in this case runs contrary to statute, endangers the public treasury, and impairs governmental functions.

As explained in the ultra vires analysis, the benefits afforded the respondents are contrary to law. In essence, the application of estoppel creates benefits not provided for under statutory authority. The case at hand may be analogized to the line of federal court cases holding that estoppel may not be used to create coverage contrary to terms of an employee benefit plan governed by the Employment Retirement Income Security Act (ERISA) where the claimants were substantively ineligible. *See, e.g., Davidian v. Southern Cal. Meat Cutters Union & Food Employees Benefit Fund*, 859 F.2d 134 (9th Cir. 1988) (and cases cited therein).

In *Davidian*, the claimant asserted estoppel to create coverage which did not exist under the substantive provisions of a benefit plan. The Ninth Circuit emphasized the policy reasons against allowing the claimant to increase the coverage with estoppel where a trust fund was involved. The court stated the rights of other employees properly covered under the fund had to be considered, and the fund assets should not be deflated because of the misrepresentations by the plan administrator. *Davidian*, at 136. The court equated the rule that estoppel may not apply to create a benefit in "violation of law" to the case before it where the coverage was "contrary to written plan provisions". *Davidian*, at 136 n.3. Ultimately, the court held that the payment was illegal be-

cause it was contrary to the written terms of the agreement and because payment "would represent a 'diversion of contributions made on behalf of covered employees outside the terms of the trust". *Davidian*, at 136 (quoting *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106, 1109 (9th Cir. 1976)).

In this case, allowing the respondents to keep their benefits essentially creates coverage in a direct contravention of statutory authority. The fact that the public treasury is implicated in this case should make the court even more apprehensive to allow estoppel than cases involving employee trust funds.

Furthermore, federal and state law requires recoupment of overpayments. 42 U.S.C. § 602(a)(22) requires that a "State plan for aid and services to needy families with children must ... provide that the State agency will promptly take all necessary steps to correct any overpayment ...." Likewise, 7 U.S.C. § 2022(b)(1)(B), the statute governing the food stamps program, states "[s]tate agencies shall collect any claim against a household arising from the overissuance of coupons ...." State law similarly mandates recoupment and grants DSHS authority to declare an overpayment to be "a debt due the state". RCW 74.04.300; RCW 43.20B.030.

The majority opinion dictates that, even where a state agency acts ultra vires in conferring a benefit that the recipient was not substantively eligible for, a state may be estopped from seeking recoupment. Courts of this state have repeatedly abstained from granting relief on equitable grounds in contravention of statute. *See Longview Fibre Co. v. Cowlitz Cy.*, 114 Wn.2d 691, 699, 790 P.2d 149 (1990); *Department of Labor & Indus. v. Dillon*, 28 Wn. App. 853, 855, 626 P.2d 1004 (1981); *Rhoad v. McLean Trucking Co.*, 102 Wn.2d 422, 427, 686 P.2d 483 (1984). However, under the majority's holding that substantive eligibility is not a requirement to establish injury, the State is prevented from carrying out its duty to recoup overpayments even where the overpayments constituted ultra vires acts.

CONCLUSION

The majority acknowledges that equitable estoppel against the government is disfavored and that each element must be proved by clear and cogent evidence. Yet here, not one of the elements of estoppel is satisfied. First, respondents did not establish the injury element because they were not substantively eligible for the benefits in the first place and because they did not establish by clear, convincing, and cogent evidence that they had forgone other aid in reliance on the improper benefits. Second, DSHS had no authority to act in conferring the benefits to the respondents; therefore, its acts were ultra vires and the State could not be held responsible for them. Third, respondents could not have reasonably relied on the benefits because they are imputed with a knowledge of the law and the limits of DSHS' authority. Finally, respondents failed to show the additional elements of estoppel against the government; manifest injustice and no impairment of governmental functions. So I dissent.

BRACHTENBACH and DURHAM, JJ., concur with MADSEN, J.